776 F.2d 846
 COLORADO RIVER INDIAN TRIBES, an Indian Tribe, Plaintiff-Appellant,
v.
TOWN OF PARKER, a municipal corporation; Nell B. Kulp; Sam
Davis; Ronald L. Morris; Arthur B. Fox; Lloyd E. Gorrell;
Lavelle McIntire; and Frank Solper, in their official
capacities as Members of the Common Council of the Town of
Parker; and John J. Oross, in his official capacity as Town
Clerk of the Town of Parker, Defendants-Appellees.
TOWN OF PARKER, a municipal corporation, Counterclaimant-Appellee,
v.
COLORADO RIVER INDIAN TRIBES, an Indian Tribe; Anthony
Drennan, Sr.; Harry Laffoon, Sr.; Elliott L. Booth;
Constance Zeyouma; Gladys Scott; Jesse W. Fisher; Mamie
Harper; Franklin McCabe, Jr.; and Dennis Patch,
Counterdefendants-Appellants.
 No. 84-1970.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted March 13, 1985.
Decided Nov. 15, 1985.
 
 Alleta d'A Belin, Shute, Milhaly & Weinberger, San Francisco, Cal., Steven J. Bloxham, Tribal Atty., Pamela S. Williams, Assoc. Tribal Atty., Parker, Ariz., for plaintiff-appellant.
 Frederick J. Martone, Jennings, Strouss & Salmon, Phoenix, Ariz., for defendants-appellees.
 Appeal from the United States District Court for the District of Arizona.
 Before WALLACE and POOLE, Circuit Judges, and BREWSTER,* District Judge.
 POOLE, Circuit Judge:
 
 
 1
 The Colorado Indian Tribe and the Town of Parker, Arizona, are involved in a jurisdictional dispute over the regulation of liquor on fee-patented lands in Parker and on rights of way through the Colorado Indian Reservation. At the Town's request, the district court enjoined the Tribe from enforcing its liquor ordinance on those lands. The Tribe appeals from that grant of a preliminary injunction. We reverse.
 
 I.
 
 2
 In December 1983, the Tribe brought this action in the United States District Court for the District of Arizona against the Town, an Arizona municipal corporation, each member of the Town Council, and the Town Clerk. The Tribe sought an injunction and declaration that the Tribe, and not the Town, has jurisdiction to regulate building activities on lands within Parker owned by the Tribe and held in trust by the federal government. The Town answered and counterclaimed against the Tribe and members of the Tribal Council in their individual capacities, also seeking an injunction and declaration that, conversely to the position of the Tribe, it has the power to regulate all lands within the townsite. In support of their respective positions on this jurisdictional issue, the Tribe contends that the Town is still part of its reservation, whereas the Town claims that the portion of the Tribe's reservation from which the townsite was reserved by Congress lost its reservation status.
 
 
 3
 The existing jurisdictional conflict between Parker and the Tribe was exacerbated when, pursuant to its Constitution and Bylaws, the Tribe amended its Health and Safety Code regulating land use and building activities on the Reservation by enacting Ordinance 82-4. That ordinance added to the Code Article 2, which regulates liquor by requiring persons selling or manufacturing liquor within the Reservation to obtain a license from the Tribe. The ordinance also prohibits the sale of liquor during certain hours of the day and to persons who are intoxicated or under age. Additionally, it requires liquor licensees to carry specified insurance and prohibits consumption of liquor in public nonlicensed places. Ordinance 82-4 became effective on February 19, 1984, thirty days after the Secretary of the Interior published notice of the ordinance in the Federal Register pursuant to 18 U.S.C. Sec. 1161.
 
 
 4
 In response to the enactment of the liquor ordinance, the Town filed a motion for a temporary restraining order seeking to enjoin the Tribe, members of the Tribal Council, and all officers, agents, and employees of the Tribe from regulating liquor on fee-patented lands within the Town and on rights of way across the reservation. The motion was heard on April 12, 1984, at which time counsel for both parties agreed to treat it as a motion for a preliminary injunction.
 
 
 5
 On April 13, the district court issued the requested preliminary injunction. The Tribe responded by filing first a motion to dissolve the preliminary injunction, and then a timely notice of appeal from the grant of the preliminary injunction.
 
 
 6
 On June 11, 1984, the district court denied the Tribe's motion for dissolution. The appeal before this court is only from the April 13, 1984, order granting the preliminary injunction. We have jurisdiction under 28 U.S.C. Sec. 1292(a)(1).
 
 II.
 
 7
 As an initial matter, the Tribe challenges the district court's finding that Parker had standing to sue because the threatened enforcement of Ordinance 82-4 harmed Parker "in its capacity as a municipal corporation and in its capacity as parens patriae of its citizens." Conclusions of law upon which injunctive relief is based are freely reviewable. Burrus v. Turnbo, 743 F.2d 693, 699 (9th Cir.1984). Thus, we review whether the Town had standing to sue de novo.
 
 
 8
 We have held that political subdivisions such as Parker cannot sue as parens patriae because their power is derivative and not sovereign. United States v. City of Pittsburg, California, 661 F.2d 783, 786-787 (9th Cir.1981); City of Rohnert Park v. Harris, 601 F.2d 1040, 1044 (9th Cir.1979), cert. denied, 445 U.S. 961, 100 S.Ct. 1647, 64 L.Ed.2d 236 (1980); In Re Multidistrict Vehicle Air Pollution M.D.L. No. 31, 481 F.2d 122, 131 (9th Cir.), cert. denied, sub. nom. Morgan v. Automobile Manufacturers Association, Inc. 414 U.S. 1045, 94 S.Ct. 551, 38 L.Ed.2d 336 (1973). Municipalities may, however, "sue to vindicate such of their own proprietary interests as might be congruent with the interests of their inhabitants." Id.
 
 
 9
 We find that the Town has demonstrated a sufficient stake in the controversy to justify our exercise of jurisdiction. Parker alleged threatened injury to its proprietary interest in revenues earned from its two percent sales tax on liquor sales, and the possibility of actual injury to its ability to function as a municipality in regulating persons and property within its jurisdictional control. Thus, because Parker has alleged a "distinct and palpable injury" to itself, as required by Warth v. Seldin, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975), we conclude that the district court properly found that it had standing to sue.
 
 III.
 
 10
 The district court's order granting the preliminary injunction is subject to a limited standard of review. We reverse the grant of a preliminary injunction only when the district court abused its discretion or based its decision on an erroneous legal standard or on clearly erroneous findings of fact. Lydo Enterprises, Inc. v. City of Las Vegas, 745 F.2d 1211, 1212 (9th Cir.1984); Wilson v. Watt, 703 F.2d 395, 398 (9th Cir.1983). The injunction in this case will be upheld if the district court correctly found that the moving party (Parker) demonstrated either (1) probable success on the merits and the possibility of irreparable injury, or (2) that serious questions are raised and the balance of the hardships sharply favors the Town. Goldie's Bookstore, Inc. v. Superior Court, 739 F.2d 466, 470 (9th Cir.1984). These are not two separate tests, but rather, merely extremes "of a single continuum." Los Angeles Memorial Coliseum Commission v. National Football League, 634 F.2d 1197, 1201 (9th Cir.1980) (quoting Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers, 584 F.2d 308, 315 (9th Cir.1978), cert. dismissed, 441 U.S. 937. 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979)).
 
 
 11
 The district court granted the injunction after finding that Parker demonstrated a probable success on the merits and the possibility of irreparable injury should the ordinance be enforced. Because we conclude that the district court's finding of possible irreparable injury to the Town was clearly erroneous, we reverse.
 
 IV.
 
 12
 The district court determined that enforcement of Ordinance 82-4 would "irreparably and immediately harm Parker in that there is no way Parker [could] recover from its economic losses caused by reduced commerce and trade and wide-spread unfavorable publicity in a tourist area." Parker would realize these economic losses in the form of reduced revenues from its two percent sales tax on liquor.
 
 
 13
 The record before us shows that the possibility of such losses is dubious and speculative. The majority of the liquor retailers within the Reservation are not even subject to the licensing requirements imposed by Ordinance 82-4. Ordinance 83-11, enacted by the Tribe on November 28, 1983, as an amendment to the tribal Government Code, exempted lands deeded in fee simple to non-Indians within the Town of Parker and the conduct of non-Indians on those lands from the application of Ordinance 82-4 and other tribal laws. Consequently, because most liquor retail operations within the Reservation are located in Parker and are conducted by non-Indians on lands owned by non-Indians, they are exempt from complying with the Tribe's liquor licensing requirements.
 
 
 14
 The Tribe's licensing requirements primarily affect the wholesale distributors who make deliveries to retailers on the Reservation. However, four of the eight wholesale distributors who service Parker were complying with the ordinance when the injunction issued. At that time, apparently none of the retailers in Parker had experienced a diminution of their liquor supplies. Moreover, nowhere in the record is there any indication that the retail demand for liquor could not be met solely by the four complying distributors, or that other wholesalers could not enter the market and satisfy the demand.
 
 
 15
 Any harm to the retailers in Parker, therefore is speculative. We have long since determined that speculative injury does not constitute irreparable injury. Goldie's Bookstore, 739 F.2d at 472 (loss of goodwill and customers was speculative and thus, not irreparable harm). Because the injury being claimed by Parker is based upon nothing more than mere theoretical harm to its liquor retailers, we cannot conclude that the possibility of injury to the Town is irreparable.
 
 
 16
 Even if the loss of tax revenues were not speculative, we could not sustain the issuance of a preliminary injunction. In Sampson v. Murray, 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), the Supreme Court discussed whether monetary loss can be sufficient to support a finding of irreparable harm, stating:
 
 
 17
 [T]he temporary loss of income, ultimately to be recovered, does not usually constitute irreparable injury. * * * "The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended * * * are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."
 
 
 18
 Id., 415 U.S. at 90, 94 S.Ct. at 952-53 (quoting Virginia Petroleum Jobbers Association v. Federal Power Commission, 259 F.2d 921, 925 (D.C.Cir.1958)).
 
 
 19
 This court addressed the issue of irreparable harm in Los Angeles Memorial Coliseum, 634 F.2d 1197, in which we considered whether to uphold a preliminary injunction that restrained the National Football League (NFL) from enforcing its rule requiring a three fourths vote of team owners before an NFL team could transfer location of home games to the Los Angeles Memorial Coliseum. In that case, we determined that the Coliseum had failed to demonstrate the possibility of irreparable injury by showing merely the extent to which revenues would be lost due to its failure to acquire an NFL team. Id. at 1202. Our conclusion was based on the well established principal that "such monetary injury is not normally considered irreparable." Id.; accord Lydo Enterprises, Inc., 745 F.2d at 1213 (economic injuries from closure and relocation of business would be compensable); Goldie's Bookstore, 739 F.2d at 471 (same). Adequate legal remedies were available to the Coliseum since any loss of revenues would be compensable by a damage award should the Coliseum ultimately prevail on the merits. Consequently, we found that the district court abused its discretion when it granted the preliminary injunction based on the threat of mere economic or monetary injury. Id. We reach the same conclusion here.
 
 
 20
 The record supports our conclusion that economic loss is the only type of harm that Parker might possibly suffer as a result of Ordinance 82-4. In addition to the loss of sales tax revenues that the district court attributed to reduced commerce and trade, and unfavorable publicity, the court also determined that Parker might be harmed by the refusal of some wholesale liquor distributors to make deliveries to retailers within the Town. After the licensing requirements were imposed by the Tribe, four liquor wholesalers refused to deliver liquor to retailers in Parker because of their fear that the Tribe would seize their trucks and liquor. As a result, some retailers were leaving Parker to pick up their liquor at sites off the reservation, which was found by the district court to create a substantial risk that Arizona's liquor statute would be violated.
 
 
 21
 This finding of possible harm involves injury not to the Town of Parker, but only to some liquor retailers and wholesalers doing business within the Town who are not parties to this action. The Town is not being forced to break the law as the result of threatened enforcement of the ordinance; it is the individual distributors and retailers who face the possibility of making and accepting liquor deliveries in violation of state liquor laws. To the extent that irreparable injury is required for the issuance of a preliminary injunction, that injury must be suffered by a party seeking relief. Here, the only injury that Parker could possibly suffer as the result of its retailers' conduct in going off the Reservation to obtain their liquor supplies would be economic. As discussed above, economic injury alone is not considered irreparable.
 
 V.
 CONCLUSION
 
 22
 The district court found that, should the tribal liquor ordinance be enforced, Parker would suffer possible irreparable harm in the form of economic injury. This finding is clearly erroneous, since purely monetary injury is compensable, and thus not irreparable. Moreover, the Town cannot claim injury on behalf of its retailers who are going off the Reservation to obtain their liquor supplies because certain wholesalers are refusing to comply with the Tribe's licensing requirements. Any resulting harm to the Town from the retailers' conduct is highly speculative and would be only monetary in nature.
 
 
 23
 We need not reach the merits of this case, or the other issues raised by the parties, since our conclusion on the issue of irreparable harm requires reversal. The district court's order granting the preliminary injunction is REVERSED.
 
 
 
 *
 Honorable Rudi M. Brewster, District Judge for the Southern District of California, sitting by designation