**RALPH ROSENBERG COURT REPORTERS, INC.,** a Hawaii corporation; and **Sally Hayashi,** an individual resident of Hawaii, Plaintiffs,

v.

**Robert C. FAZIO,** individually and in his official capacity as President of the Hawaii Board of Certified Shorthand Reporters; **Judith P. Powers, Jeanette W. Iwado** and **M. Sharon Souza,** individually and in their official capacities as members of the Hawaii Board of Certified Shorthand Reporters; **Barbara Tomita** and **Virgil J. Wilson III,** in their official capacities as members of the Hawaii Board of Certified Shorthand Reporters only; **Herman T.F. Lum,** in his official capacity as Chief Justice of the Hawaii Supreme Court only; **Ronald T.Y. Moon, Robert G. Klein** and **Steven H. Levinson,** in their official capacities as Associate Justices of the Hawaii Supreme Court only; and **James S. Burns,** in his official capacity as substitute Associate Justice of the Hawaii Supreme Court sitting by designation only, Defendants.

Civ. No. 92–00781 SPK.

United States District Court,<br/>D. Hawaii.

Jan. 20, 1993.

Edward A. Jaffe, Steven B. Jacobson, Wynn Irene Cross, Torkildson Katz Jossem Fonseca, Jaffe & Moore, Honolulu, HI, for plaintiffs.

Ann V. Burns, Steven S. Michaels, Ted G. Clause, Atty. Gen. State of Hawaii, Robert A. Marks, State Atty. Gen., Honolulu, HI, for defendants.

## ORDER DENYING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION AND DENYING DEFENDANTS' CROSS–MOTION FOR STAY

DAVID ALAN EZRA, District Judge.

This court heard plaintiffs' motion on January 12, 1993. Edward A. Jaffe, Esq. and Steven B. Jacobson, Esq. appeared on behalf of plaintiffs; Steven S. Michaels, Ann V. Burns, and Ted G. Clause, Deputies Attorney General, appeared on behalf of defendants. After reviewing the motion and the supporting memoranda, the court denies plaintiffs' motion for preliminary injunction and denies defendants' cross-motion for stay as moot.

## FACTUAL AND PROCEDURAL BACKGROUND

On February 28, 1984, the Hawaii Supreme Court promulgated Rules Governing Court Reporting in the State of Hawaii (Rules) pursuant to Article VI, § 7 of the Hawaii constitution and Hawaii Revised Statutes § 602–11 (1976). The Rules set standards for certification of reporters, define prohibited acts, and create the six-member Hawaii Board of Certified Shorthand Reporters (CSR Board). Under the Rules, the CSR Board is authorized to "prepare and administer appropriate examinations" for certification of court reporters; "make recommendations to the supreme court relating to the adoption of any additional standards" for regulating certified shorthand reporters; and, pending promulgation of rules and procedures for imposition of sanctions directly by the board, "make advisory recommendations to the Hawaii Supreme Court with respect to the discipline, censure, suspension or revocation of certification of certified shorthand reporters." Rules 8, 9(a) (1984, as amended).

As currently amended, the Rules prohibit persons other than those certified through the CSR Board from "engag[ing] in the taking of oral depositions, for use in the courts of this state" and provide that the "courts of this state" cannot accept for filing transcripts of oral depositions "unless signed and certified by a Hawaii certified shorthand reporter." *Id.* 2. Thus, the consequence of not obtaining or losing one's certificate is the inability to deliver transcripts admissible in Hawaii state courts.

Prior to November 10, 1992, the Rules allowed certified shorthand reporters to provide incentives to their customers for scheduling depositions with them if the reporters:

> set forth on the face of the bill any consideration paid, given or agreed to be paid or given by the person or reportorial service in any form including, without limitation to the foregoing: coupons, services, food, travel, cash or other thing of value, along with a statement of the val-

ue thereof and the name and business address of the person to whom the thing was given or agreed to be given.

Rule 14 (1986). Attorneys were required by the former rule to supply the same information to their clients. *Id.* On November 19, 1991, in response to an inquiry by Hawaii State Senator Andrew Levin regarding the propriety of accepting gifts from court reporting services, the Hawaii Office of Disciplinary Counsel, established to supervise attorney conduct, concluded that attorneys are not prohibited from accepting gifts and awards from court reporting firms, provided that the client consents.

On August 14, 1992, CSR Board Chairman Robert C. Fazio, with the consent of Associate Justice Ronald Moon, convened a meeting to which all free-lance court reporters were invited (August 14 meeting), to determine if the court reporters would voluntarily discontinue their incentive programs. Two of the reporting services represented at the meeting expressly refused to refrain from offering incentives. Subsequently, the CSR Board transmitted to the Supreme Court of Hawaii proposed changes in the Rules entirely banning all incentive programs. On November 10, 1992, the Hawaii Supreme Court adopted the changes and amended, inter alia, Rules 14 and 15.

The amended Rule 14 deletes the requirement that court reporters disclose any gifts or incentives paid, their value, and the name and address of the recipient, and adds a prohibition stating that "All incentive programs are expressly forbidden in the State of Hawaii by any reporter or reporting agency." Rule 14 (1992). Violation of this provision is a ground for "discipline, censure, suspension or revocation of certification." Rules 15(a), 15(b)(5) (1992).

On November 23, 1992, Ralph Rosenberg Court Reporters, Inc. (Rosenberg) wrote to legal secretaries and legal assistants in Hawaii informing them that it was challenging the new provisions of the Rules. The letter stated that Rosenberg would "keep track of all oral and written depositions you schedule with us," and "reinstate our incentive programs RETROACTIVELY . . .

as soon as it is permissible for us to do so." Rosenberg joined with plaintiff Sally Hayashi, a legal secretary who claims an interest in receiving incentives, and filed this action on December 18, 1992, to challenge the validity of the August 14 meeting, and Rules 14, 15(a) and 15(b)(5), as amended on November 10, 1992. Concurrently with the complaint, plaintiffs filed a motion for a temporary restraining order, which was scheduled for January 5, 1993.

The following Monday, December 21, 1992, court reporter Reginald Knipes sent a facsimile letter to Fazio requesting that "the CSR Board and the Supreme Court ... consider taking decisive action" against Rosenberg for its "banking" of incentive awards. Fazio drafted a letter the same day to Justice Moon, informing him of the Knipes' letter, and stating he was "calling an emergency meeting to invoke sanctions against [Ralph Rosenberg]." This version of the letter was never sent. Fazio was served with the complaint in this action on December 22, 1992. On the morning of December 24, 1992, the parties agreed to continue the TRO hearing to January 11, 1993. Later that day, after consulting with Deputy Attorney General Steven Michaels, Fazio sent a revised letter to Justice Moon scheduling an "emergency" meeting of the CSR Board for January 8, 1993, to determine whether to issue an order to Rosenberg Reporters to show cause why it should not be sanctioned for alleged violation of Rule 14.

Plaintiffs responded by immediately filing a separate emergency motion for a temporary restraining order enjoining defendants from instituting or proceeding with any disciplinary action against Rosenberg pending the outcome of the court's decision on the original TRO. This court, on December 31, 1992, entered the emergency temporary restraining order but declined to "estop defendants from arguing that this court should abstain from hearing the [original] TRO."

By stipulation in open court, the parties have consented to the treatment of the original TRO motion, lodged December 18, 1992, as a motion for preliminary injunction. Along with their opposition to the preliminary injunction, defendants have made a conditional cross-motion to stay any preliminary injunction this court may grant pending an appeal to the Ninth Circuit Court of Appeals. For the reasons more fully discussed below, the court denies the preliminary injunction and denies the cross-motion for stay as moot.

## STANDARD OF REVIEW

 The Ninth Circuit applies a "sliding scale" analysis for the issuance of preliminary injunctions, requiring the court to balance the plaintiff's likelihood of success on the merits with the hardships that would be caused to the plaintiff, the defendant, or the public if the injunction were granted or denied. *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988). Thus, to obtain a preliminary injunction, the plaintiff must show either (1) a combination of probable success on the merits and the possibility of irreparable injury, or (2) that serious questions on the merits are raised and the balance of hardships tips sharply in its favor. *Id.* (citations omitted). These formulations are not different tests but represent two points on a "single continuum," such that "[i]f the balance of harm tips decidedly toward the plaintiff, the plaintiff need not show as robust a likelihood of success on the merits as when the balance tips less decidedly." *Id.* (citations omitted). Under either formulation, the moving party must demonstrate a significant threat of *irreparable* injury, irrespective of the magnitude of the injury. *Big Country Foods v. Board of Educ.*, 868 F.2d 1085, 1086 (9th Cir.1989) (emphasis added).

## DISCUSSION

Plaintiffs contend they will "unquestionably prevail on the merits of this action" on three general grounds. First, they argue that both the August 14 meeting and the Rules constitute an unlawful price-fixing agreement and, thus, violate federal antitrust laws. Second, plaintiffs assert the Rules are preempted by the federal supremacy clause. Third, they argue that

the Rules "clearly violate" the First Amendment. Additionally, plaintiffs contend that the balance of hardships tips decidedly in their favor and, thus, a preliminary injunction is necessitated. Defendants counter with the argument that plaintiffs have failed to show any likelihood of success on the merits and that the balance of hardships tips decidedly in defendants' favor. Additionally, defendants contend this court should abstain from hearing this action in the first place.

## I. ABSTENTION

Defendants argue that, whether or not this case presents any jurisdictionally substantial federal questions, this court should not grant relief, but should dismiss the action or abstain from hearing the case. In support of this contention, defendants submit that this is an appropriate case for application of three different branches of abstention: *Younger* abstention, *Burford* abstention, and/or *Pullman* abstention.

### A. *Younger Abstention*

■ The *Younger* abstention doctrine, *see Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), prohibits federal courts from enjoining certain categories of pending state proceedings except in extraordinary circumstances. *Partington v. Gedan*, 880 F.2d 116, 120 (9th Cir. 1989). The mandate of *Younger* and its progeny requires dismissal if: (1) there are ongoing judicial or administrative proceedings; (2) the proceedings implicate important state interests; and (3) there is an adequate opportunity to raise federal issues in the state proceeding. *Middlesex County Ethics Comm. v. Garden State Bar Assoc.*, 457 U.S. 423, 432, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). While *Younger* initially applied only to pending criminal proceedings, it has been extended to certain state civil or administrative proceedings, including state disciplinary proceedings. *Partington*, 880 F.2d at 121 (citing *Middlesex*, 457 U.S. 423, 102 S.Ct. 2515).

Defendants contend that this court must abstain because there are state disciplinary proceedings pending before the CSR Board. The court disagrees. As an initial matter, neither of the two plaintiffs in this lawsuit, Sally Hayashi and Ralph Rosenberg Court Reporters, Inc., are the subject of *any* disciplinary proceedings by the CSR Board, nor can they be since neither of them are certified shorthand reporters. *See* Rule 8 (CSR Board may make appropriate findings and recommendations to the Hawaii Supreme Court regarding discipline of certified shorthand reporters). Even were the court to find otherwise, however, there are still no *pending* proceedings. As the Ninth Circuit stated:

> Whether the state proceedings are "pending" is not determined by comparing the commencement dates of the federal and state proceedings. Rather, abstention under *Younger* may be required if the state proceedings have been initiated " 'before any proceedings of substance on the merits have taken place in the federal court.' "

*Polykoff v. Collins*, 816 F.2d 1326, 1332 (9th Cir.1987) (quoting *Hawaii Housing Auth. v. Midkiff*, 467 U.S. 229, 238, 104 S.Ct. 2321, 2328, 81 L.Ed.2d 186 (1984), *Hicks v. Miranda*, 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975)).

Defendants contend the state disciplinary proceedings were commenced on December 21, 1992—the day Knipes sent the letter to Fazio—or, at least, by December 24, 1992—the day Fazio notified Justice Moon of the issue. A letter of complaint sent by a competitor of the plaintiff cannot be considered the instigation of disciplinary proceedings. Contrary to defendants' characterization of *Partington* as a case where a judge "had merely filed a complaint of judicial misconduct with the office of disciplinary counsel" when the federal complaint was filed, the disciplinary action in that case had already advanced through the first five stages of an elaborate disciplinary procedure. *Partington*, 880 F.2d 116, 118–19 & n. 1; *see also* Haw.Sup.Ct.R. 13. Thus, abstention by the federal court was appropriate. In contrast, there is nothing in the Rules to indicate how a disciplinary proceeding is instituted. The court is confident, however, that disciplin-

ary action cannot be considered "pending" every time a competitor, attorney, or member of the general public makes an allegation. Defendants attempt to analogize the circumstances of this case with "grand-jury-type proceedings," but such a comparison would produce absurd results. The government would have to contend that every time someone called the police with an allegation of wrongdoing, a state criminal proceeding was thereafter "pending," whether or not the police had conducted any investigation, issued any warrants or subpoenas, or filed any charges. Furthermore, while the court believes a preliminary meeting of the CSR Board "to determine whether an Order to Show Cause should issue" is a far cry from a grand jury proceeding, the CSR Board's "emergency meeting" was not scheduled until *after* the original hearing date in this action, which was continued at the *defendants'* request.

Alternatively, the court finds that, if a "proceeding" is in fact pending, plaintiffs would not have an adequate opportunity to raise federal issues in such a proceeding. First, there are absolutely no rules and regulations governing the conduct of disciplinary proceedings under the Rules. The Rules provide:

> Until such time as the board adopts the appropriate rules and regulations to govern any proceedings for discipline, censure, suspension or revocation of the certification of certified shorthand reporters, the board may make advisory recommendations to the Hawaii Supreme Court with respect to the discipline, censure, suspension or revocation of certification of certified shorthand reporters. The board may conduct informal hearings with respect to any recommendations for discipline, censure, suspension or revocation, and shall furthermore state to the Hawaii Supreme Court, in making its recommendation, all reasons in support of its recommendation. A decision or recommendation of the board with respect to the discipline, censure, suspension or revocation of certification shall not have any final authoritative effect and shall merely be advisory in nature until such time as the board has promulgated, and

the supreme court has approved, appropriate rules and regulations governing proceedings for discipline, censure, suspension or revocation of certification.

Rule 9(b). At this time, no rules have been promulgated. While the court finds that the absence of rules does not necessarily mean that a disciplinary hearing would lack due process, there is no guaranty that plaintiffs would be provided a meaningful forum for redress of federal questions. Second, the federal court has exclusive jurisdiction over plaintiffs' Sherman Act claims. *State of Washington v. American League,* 460 F.2d 654, 658 (9th Cir.1972).

Because the court finds that there are no "pending" state proceedings and that, if there were, plaintiffs would have an inadequate opportunity to raise their federal questions, it is unnecessary to determine whether those "proceedings" involve important state interests. Accordingly, the court declines to abstain from hearing this case based on *Younger.*

### B. *Burford Abstention*

■ The *Burford* abstention doctrine, *see Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), requires federal courts to abstain from cases that involve complex questions of state law and that are of minimal federal importance.

> Where timely and adequate state court review is available, a federal court sitting in equity must decline to interfere with the proceedings or orders of state administrative agencies: (1) when there are "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar"; or (2) where the "exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."

*New Orleans Pub. Serv. v. Council of New Orleans,* 491 U.S. 350, 361, 109 S.Ct. 2506, 2514, 105 L.Ed.2d 298 (1989) (quoting *Colorado River Water Conservation Dist. v.*

*United States,* 424 U.S. 800, 814, 96 S.Ct. 1236, 1245, 47 L.Ed.2d 483 (1976)).

*Burford* abstention is not justified in these circumstances. This case involves federal claims and does not raise any difficult questions of state law. Furthermore, although the case implicates the administrative process of the Rules, the Rules are not a *complex* state regulatory system. Accordingly, the court declines to abstain from hearing this action under *Burford.*

### C. *Pullman Abstention*

The *Pullman* abstention doctrine, based on *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), requires a federal court to abstain from hearing a case "when difficult and unsettled questions of state law must be resolved before a substantial federal question can be decided." *Midkiff,* 467 U.S. at 236, 104 S.Ct. at 2327. In the Ninth Circuit, courts are directed to apply a three-part test in determining whether *Pullman* abstention applies:

> First, the proper resolution of the state law question at issue must be uncertain. Second, a definitive ruling on the state issue must potentially obviate the need for constitutional adjudication by the federal court. Third, the complaint must touch upon "a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

*Burdick v. Takushi,* 846 F.2d 587, 588 (9th Cir.1988) (citations omitted).

Defendants contend that the issue of the Hawaii Supreme Court's authority to promulgate the Rules underlies each of the plaintiffs' claims. They urge this court to abstain from granting a preliminary injunction and to certify the following questions to the Supreme Court of Hawaii: (1) Is there authority in Hawaii law for the Hawaii Supreme Court to regulate court reporting services in the manner provided by the Rules at issue here? and (2) To what extent are those rules amenable to limiting interpretations that would moot or limit the federal issues here?

Applying the Ninth Circuit's three-part test, the court finds that *Pullman* abstention would be premature at this stage of the proceedings. First, although the Hawaii courts have not yet ruled on the validity of the Rules or the Supreme Court's authority to promulgate them, the Hawaii Supreme Court has used its constitutional and statutory authority to promulgate, among others, Rules of Civil Procedure, Rules of the Supreme Court, and a Code of Professional Responsibility. These rules, particularly the rules governing attorney conduct and discipline, have been subject to interpretation by the Hawaii courts. Abstention under *Pullman* is warranted only if "a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law." *Pearl Invest. Co. v. City & County of San Francisco,* 774 F.2d 1460, 1465 (9th Cir.1985). The court believes there is sufficient interpretation of other Hawaii Supreme Court rules to predict how that Court would answer the above questions.

Second, a definitive ruling on either of those questions would not necessarily obviate the need to reach the federal questions. The Hawaii Supreme Court's authority to promulgate the specific Rules in issue will not likely have any effect on the resolution of the federal questions. For example, whether or not the Court had "constitutional and statutory" authority to ban incentive programs by certified shorthand reporters, the Hawaii Supreme Court is still subject to *Parker* immunity from antitrust liability.[1]

Third, although the court believes that this action does touch upon "a sensitive area of social policy," it is not the type of case "upon which the federal courts ought not to enter unless no alternative to its adjudication is open." *See Burdick,* 846 F.2d at 588. While issues of the Hawaii Supreme Court's authority are extremely sensitive, questions regarding the court's authority to promulgate rules governing the conduct of court reporters affect a small percentage of Hawaii's population.

---

1. See discussion of the federal questions below.

On the other hand, the public will be greatly affected by the resolution of the federal questions in this action. Plaintiffs argue the public must be protected from an illegal price-fixing scheme; defendants argue the public must be protected from illegal "theft" of client funds in the form of incentives being paid to lawyers, legal assistants and secretaries, rather than clients. Accordingly, the court declines to abstain from this case under *Pullman.*

Because the court finds it unnecessary to abstain from this action, it will now turn to whether a preliminary injunction should issue.

## II. PRELIMINARY INJUNCTION

As stated above, to obtain a preliminary injunction plaintiffs must show both a potential for success on the merits and a threat of irreparable injury if the injunction is denied. *Alaska v. Native Village of Venetie*, 856 F.2d 1384, 1389 (9th Cir.1988).

### A. *Likelihood of Success on the Merits*

### 1. Sherman Antitrust Violation

Plaintiffs contend that the prohibition on offering incentives is an illegal price-fixing agreement that violates Section One of the Sherman Antitrust Act, 15 U.S.C. § 1.[2] In *Parker v. Brown*, 317 U.S. 341, 63 S.Ct. 307, 87 L.Ed. 315 (1943), however, the Supreme Court held that the Sherman Antitrust Act was not intended to apply to the actions of the state as a sovereign. Over the years, the extent of *Parker* immunity has been expanded and delineated.

In *Bates v. State Bar of Arizona*, 433 U.S. 350, 360, 97 S.Ct. 2691, 2697, 53 L.Ed.2d 810 (1977), the Court held that a state supreme court, when acting in a legislative capacity, occupies the same position as that of a state legislature. The decision in *Bates* is directly on point. Here, the

Hawaii Supreme Court, acting in its legislative capacity, promulgated the Rules. There is no need to look further to determine that *Parker* immunity applies.

The cases cited by plaintiffs are not on point. Plaintiffs attempt to argue that the Hawaii Supreme Court was without "constitutional and statutory authority" to promulgate rules that have an anticompetitive effect, citing, among other cases, *Charley's Taxi Radio Dispatch Corp. v. SIDA of Hawaii, Inc.*, 810 F.2d 869, 876 (9th Cir. 1987). Plaintiffs' analysis, however, applies only to cases involving conduct, not of the legislature or supreme court, but of representatives acting with state authority, such as municipalities (*Community Communications Co. v. Boulder*, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982)), state authorized rate bureaus, (*Southern Motor Carriers Rate Conference v. United States*, 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985)), and private parties acting with authority of the state (*California Retail Liquor Dealers Ass'n v. Midcal Aluminum, Inc.*, 445 U.S. 97, 100 S.Ct. 937, 63 L.Ed.2d 233 (1980)). In these latter cases, the Supreme Court has required a showing that the anticompetitive conduct "is pursuant to a 'clearly articulated and affirmatively expressed state policy' to replace competition with regulation." *Hoover v. Ronwin*, 466 U.S. 558, 569, 104 S.Ct. 1989, 1995, 80 L.Ed.2d 590 (1984). The same is not true where the conduct at issue is that of a state supreme court. *Id.; Bates*, 433 U.S. at 359–60, 97 S.Ct. at 2696–97. As the Ninth Circuit plainly recognized:

[T]he Supreme Court required no such evidence of legislative contemplation when it ruled that a state supreme court was entitled to *Parker* immunity for its actions in adopting and enforcing disci-

---

**2.** Plaintiffs also contend the August 14 meeting involved an illegal price-fixing agreement. There is a factual dispute, however, over whether an "agreement" was ever reached at that meeting, since two of the reporting services refused to suspend their incentive programs. Regardless, even were the court to find the August 14 meeting constituted an antitrust violation, the "agreement" was simply not to offer

incentive programs. Rosenberg never agreed to comply. Hence, there is no injury to the plaintiffs. Furthermore, there is nothing for the court to enjoin. Even if the court prohibited compliance with the August 14 meeting, Rosenberg still would be prohibited from offering incentives under Rule 14. Accordingly, the court will only address the allegation that the Rules are in violation of the antitrust laws.

plinary rules to govern the state bar. *Bates v. State Bar of Arizona,* 433 U.S. 350, 359–60 [97 S.Ct. 2691, 2696–97, 53 L.Ed.2d 810] (1977).

*Charley's Taxi,* 810 F.2d at 875–76.

Furthermore, the immunity enjoyed by the Hawaii Supreme Court in this case applies equally to all the defendants. Although the CSR Board would not, acting alone, be entitled to *Parker* immunity, *see Goldfarb v. Virginia State Bar,* 421 U.S. 773, 778–92, 95 S.Ct. 2004, 2008–16, 44 L.Ed.2d 572 (1975), it was not acting alone. In *Bates,* the plaintiffs challenged an attorney disciplinary rule that prohibited advertising as a violation of the Sherman Act. The Supreme Court held that "the challenged restraint is the affirmative command of the Arizona Supreme Court under its Rules.... That court is the ultimate body wielding the State's power over the practice of law, [citations], and, thus, the restraint is 'compelled by direction of the State acting as a sovereign.'" *Bates,* 433 U.S. at 360, 97 S.Ct. at 2697 (quoting *Goldfarb,* 421 U.S. at 791, 95 S.Ct. at 2015). Although the defendant was the State Bar, which was established in accordance with the Rules of the Supreme Court of Arizona, *Id.* 433 U.S. at 353 n. 3, 97 S.Ct. at 2693 n. 3, the

> Arizona Supreme Court [was] the real party in interest; it adopted the rules, and it is the ultimate trier of fact and law in the enforcement process. Although the State Bar plays a part in the enforcement of the rules, its role is completely defined by the court; the [State Bar] acts as the agent of the court under its continuous supervision.

*Id.* at 361, 97 S.Ct. at 2697 (citations omitted).

The identical situation is present here. The Hawaii Supreme Court has the power to promulgate and enforce rules governing proceedings in the courts of the state. Haw. Const. art. VI, § 7 (1978). The court acted in its legislative capacity in promulgating the Rules, including creating the CSR Board. The CSR Board is an official body whose members are selected and appointed by the Hawaii Supreme Court.

The supreme court gave the CSR Board the power, under the rules, to recommend disciplinary proceedings against court reporters, but "the ultimate trier of fact and law in the enforcement process" is the Hawaii Supreme Court. As state action, the promulgation of the Rules is entitled to *Parker* immunity.

◼ Likewise, this court has no basis to look behind the actions of the state Supreme Court. In *Hoover v. Ronwin,* 466 U.S. 558, 579–80, 104 S.Ct. 1989, 2001, 80 L.Ed.2d 590 (1984), the Supreme Court held that "where the action complained of ... was that of the State itself, the action is exempt from antitrust liability regardless of the State's motives in taking the action." In *Hoover,* the Arizona Supreme Court, pursuant to its constitutional authority to determine who should be admitted to practice law in the state, established the Committee on Examinations and Admissions. The Arizona Supreme Court Rules provided that the Committee would examine applicants, utilizing a system of grading or scoring as it deems appropriate, and recommend to the court those applicants it finds have met the admission requirements. The plaintiff failed the bar exam and was denied admission to practice law in Arizona. The plaintiff challenged the Committee's actions, alleging the individual members had conspired to restrain trade by "artificially reducing the numbers of competing attorneys in the State of Arizona." *Id.* at 565, 104 S.Ct. at 1993. In holding that the Committee members were entitled to *Parker* immunity, the Supreme Court held that antitrust plaintiffs may not "look behind the actions of state sovereigns and base their claims on perceived conspiracies to restrain trade among the committees, commissions, or others who necessarily must advise the sovereign." *Id.* at 580, 104 S.Ct. at 2001. Where, as here, a state supreme court promulgates rules in its legislative capacity, the court's actions are entitled to antitrust immunity "regardless of the State's motives." *Id.*

Finally, plaintiffs' argument that *Parker* immunity does not apply where the state is a market participant also will fail. In *City*

*of Columbia v. Omni Outdoor Advertising, Inc.,* — U.S. ——, ——, 111 S.Ct. 1344, 1351, 113 L.Ed.2d 382 (1991), the Supreme Court held that there is no "conspiracy exception" to *Parker* immunity. Although immunity may not be available

> where the State acts not in a regulatory capacity but as a commercial participant in a given market, ... [t]hese sentences should not be read to suggest the general proposition that even governmental *regulatory* action may be deemed private—and therefore subject to antitrust liability—when it is taken pursuant to a conspiracy with private parties.

*Id.* Here, the Hawaii Supreme Court acted solely in its regulatory capacity. No members of the court who promulgated the Rules have any financial interest or participation in the court reporting market. Nor is it relevant that some members of the CSR Board are private free-lance court reporters, because "it is both inevitable and desirable that public officials often agree to do what one or another group of private citizens urges upon them." *Id.*

Accordingly, even were the court to find that the Rules had an anticompetitive effect, the law is clear that defendants would be entitled to *Parker* immunity. Thus, the plaintiffs have not carried their burden of proving they have a substantial likelihood of prevailing on the merits of their antitrust claim.

### 2. Federal Preemption

▇▇▇▇ Plaintiffs next argue that by attempting to regulate the preparation of depositions and other documents for use in the federal courts, the Rules violate the Supremacy Clause of the United States Constitution. In support of their proposition, plaintiffs correctly point out that the regulation of procedure and conduct in federal court are a matter of federal law because of the Supremacy Clause and the exclusivity of congressional power over the federal courts. *See, e.g.,* 28 U.S.C. § 2071(a), 2072(a)–(b).

Nevertheless, there is nothing in the Rules to indicate the rules were intended to apply in federal court. Although Rule 14 broadly prohibits "all incentive programs ... in the State of Hawaii," the scope of the rules is limited to the judicial system of the State of Hawaii:

> The examination, certification and regulation of the practice of court reporting are matters which are integrally related to the effective, impartial and prompt operation of the judicial system of the State of Hawaii. The examination, certification and supervision of the conduct and proficiency of court reporters is hereby made subject to regulation by rule of the supreme court. Nothing in these rules shall be construed to limit the contempt powers of the courts of this state.

Rule 1 (1991). Construing a state statute to avoid a federal constitutional issue is mandated if there is "any narrowing construction or practice to which the law is 'fairly susceptible.'" *City of Lakewood v. Plain Dealer Publishing Co.,* 486 U.S. 750, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988) (quoting *Erznoznik v. City of Jacksonville,* 422 U.S. 205, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975)). Furthermore, at the hearing on this matter, counsel for the defendants acknowledged that the Hawaii Supreme Court has no authority to set rules and regulations affecting practice before the United States Courts, and, therefore, the rule in question does not prohibit court reporters from maintaining incentive programs for depositions to be used in federal court cases.

Finally, the only consequence of a state court reporter's participation in a banned incentive program is a sanction against his or her state certification; ultimately, the revocation of that certification can only disable the court reporter from delivering admissible transcripts in the Hawaii state courts. Rule 2 (1991). The court does not believe plaintiffs have proven a substantial likelihood of success on the merits of their preemption claim.

### 3. First Amendment Violation

Plaintiffs' final argument is that the Rules violate their First Amendment right to freedom of speech by prohibiting them

from mentioning incentives in the advertising of their services. According to plaintiffs, this action involves commercial speech, and must be analyzed under the general principles of *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980).

The court finds that plaintiffs will not likely prevail on the merits of their First Amendment claim for two reasons. In the first place, there is nothing in Rules 14, 15(a) or 15(b) governing speech. Rule 14 prohibits court reporters from awarding prizes, bonuses, or "volume discounts" for use of their services. It is not directed at speech at all. Plaintiffs do not even attempt to argue that the incentives they are prohibited from offering can somehow be considered speech.

Secondly, even if the Rules could be considered a restriction on speech, "commercial speech receives a limited form of First Amendment protection so long as it concerns a lawful activity and is not misleading or fraudulent." *Posadas de Puerto Rico Assocs. v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 340, 106 S.Ct. 2968, 2976, 92 L.Ed.2d 266 (1986) (involving direct prohibitions on advertising). Here, the Hawaii Supreme Court has made it unlawful for certified court reporters to offer incentive programs to their customers. The fact that Hawaii has substantively banned the underlying transaction means that speech related to the programs is "related to unlawful activity" within the meaning of *Central Hudson.*

Plaintiffs' entire argument is that a ban on incentive programs is unlawful under the Sherman Antitrust Act and the federal Supremacy Clause, and thus advertising such incentives is "lawful." The court, however, has already found that plaintiffs are not likely to succeed on the merits of their first two claims. Accordingly, they will not likely succeed on the merits of their First Amendment claim either.

### B. *Threat of Injury*

The court does not believe plaintiffs have demonstrated a significant threat of irreparable injury. Rosenberg contends it will suffer irreparable injury if a preliminary injunction is not granted because it will lose business and goodwill. Hayashi contends that she will be similarly damaged by the loss of incentives she otherwise would have received. The loss is irreparable, plaintiffs argue, because their damages could not be calculated with certainty, and, even if they could, the Eleventh Amendment bars damage claims against the defendants insofar as they are state officials acting in their official capacities. The record, however, is devoid of any evidence that plaintiffs in fact lost business or goodwill in the two months the amended rules have been in effect. Nor is there any evidence that plaintiffs will lose any substantial future business or goodwill. This allegation appears wholly speculative, and "speculative injury does not constitute irreparable injury." *Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir.1984).[3]

Plaintiffs correctly point out that injunctive relief is warranted upon a showing of "threatened" injury. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 130–31, 89 S.Ct. 1562, 1580–81, 23 L.Ed.2d 129 (1969). Nevertheless, plaintiffs still need to "demonstrate a *significant* threat of injury from an impending violation of the antitrust laws." *Id.* at 130, 89 S.Ct. at 1580. In *Zenith,* the two defendants had conspired to exclude the plaintiff from the market altogether. The Supreme Court found the threat of harm to be inherent in defendants' conduct of completely excluding plaintiff from the market. Here, Rosenberg has not, and is not, being excluded from the market or prevented from actively competing for business.

This case is much more analogous to *Colorado River Indian Tribes v. Town of*

---

**3.** Likewise, Hayashi has shown no irreparable injury. There is no evidence pertaining to the number of depositions she usually schedules, the number scheduled with Rosenberg, or the percentage of clients who generally consents to

her retaining the incentive bonuses. Without a single factual allegation, the court finds Hayashi's potential "damages" to be entirely speculative. *Goldie's,* 739 F.2d at 472.

*Parker,* 776 F.2d 846 (9th Cir.1985). In that case, the Town of Parker sought to enjoin the enforcement of a Colorado River Indian Tribe ordinance that regulated liquor on lands within the town. In granting the injunction, the district court held that enforcement of the ordinance would "irreparably and immediately harm Parker in that there is no way Parker [could] recover from its economic losses caused by reduced commerce and trade and widespread unfavorable publicity in a tourist area." *Id.* at 849. The Ninth Circuit reversed, holding that the allegations of irreparable harm were "dubious and speculative." *Id.* At the time the injunction was issued, several of the wholesale distributors were complying with the ordinance, and the Town had no evidence of any economic losses. *Id.* Similarly, here, plaintiffs make only conclusory allegations that they are losing and will continue to lose potential customers and goodwill so long as the prohibition on incentives remains in effect. Without more, the court simply cannot find that plaintiffs have shown either a significant threat of injury or that the balance of hardships tips sharply in their favor.

## CONCLUSION

For the reasons stated above, the court hereby DENIES plaintiffs' motion for a preliminary injunction and DENIES defendants' cross-motion for stay as moot. The temporary restraining order previously issued by this court is hereby dissolved.

IT IS SO ORDERED.