1 F.Supp.2d 1235 (1998)
The S.W. SHATTUCK CHEMICAL COMPANY, INC., Plaintiff,
v.
The CITY AND COUNTY OF DENVER, COLORADO, Defendant,
and
The UNITED STATES of America, Plaintiff,
v.
The CITY AND COUNTY OF DENVER, COLORADO, Defendant.
Civil Action Nos. 96-D-2968, 97-D-1611.
United States District Court, D. Colorado.
April 17, 1998.
*1236 John D. Faught, Denver, CO, Mark B. Helm, Ilana B. Rubenstein, Munger, Tolles & Olson, LLP, Los Angeles, CA, Steven D. Taylor, Asst. U.S. Atty., Denver, CO, for Plaintiffs.
T. Shawn Sullivan, Steven J. Cook, Asst. City Attoneys, Carolyn L. Bucholz, Michael R. Hope, Patton Boggs, L.L.P., Denver, CO, for Defendant.
MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF THE S.W. SHATTUCK CHEMICAL COMPANY, INC.'S APPLICATION FOR A PRELIMINARY INJUNCTION
DANIEL, District Judge.

I. INTRODUCTION

This matter is before the Court on the application for a preliminary injunction filed by plaintiff The S.W. Shattuck Chemical Company, Inc. ("Shattuck") on January 7, 1998. The parties, including the United States of America, have filed a number of briefs concerning Shattuck's application. In addition, the parties presented documentary *1237 and testimonial evidence, as well as oral argument, at a hearing over two days on April 8-9, 1998. Having reviewed the evidence submitted by the parties as well as the relevant legal authorities, the Court finds that the issuance of a preliminary injunction is warranted. Accordingly, for the reasons stated below, the Court GRANTS Shattuck's application for a preliminary injunction.

II. ANALYSIS

A. Preliminary Issues
The memoranda filed by the City and County of Denver ("Denver") have raised two issues which the Court addresses before reaching the substance of Shattuck's application. First, in its opposition to the application, Denver asserted that the Court should abstain in this case based on the doctrine of Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). A federal court must abstain pursuant to the Younger doctrine where three conditions are satisfied:
(1) there are ongoing state criminal, civil or administrative proceedings;
(2) the state court offers an adequate forum to hear the federal plaintiff's claims from the federal lawsuit; and
(3) the state proceeding involves important state interests, matters which traditionally look to state law for their resolution or implicate separately articulated state policies.
Taylor v. Jaquez, 126 F.3d 1294, 1297 (10th Cir.1997), cert. denied, ___ U.S. ___, 118 S.Ct. 1187, 140 L.Ed.2d 317 (1998). In the case at bar, the Court finds that Younger is not applicable.
A state forum is inadequate for purposes of Younger abstention where the plaintiff's claims are subject to exclusive federal jurisdiction. Lawrence v. Cohn, 932 F.Supp. 564, 575 (S.D.N.Y.1996) (finding abstention inappropriate in securities fraud action); Space Age Fuels, Inc. v. Standard Oil Co. of California, 1996 WL 160741 at *5 (D.Or. Feb. 29, 1996) (abstention inappropriate in R.C.R.A. case); Ralph Rosenberg Court Reporters, Inc. v. Fazio, 811 F.Supp. 1432, 1437 (D.Hawai'i 1993) (abstention inappropriate in Sherman Act case). To the extent that Shattuck has asserted claims in this action that the challenged ordinances are preempted by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9601-9675, these claims "arise under" CERCLA. CERCLA provides for exclusive federal jurisdiction over "all controversies arising under" the statute. 42 U.S.C. § 9613(b). Thus, the Colorado state courts would not provide an adequate forum for them to be heard. In addition, the other two conditions for Younger abstention are not met. There is no ongoing state criminal, civil or administrative proceeding that Shattuck could participate in. Further, while there are state constitutional claims asserted in this case such that the case raises some important state interests, the issues of federal concern raised in this case involving CERCLA and an alleged violation of the Equal Protection Clause of the United States Constitution compel a conclusion that the case should remain in this Court.
The second preliminary issue is whether collateral estoppel or res judicata is applicable to this proceeding. Denver did not argue collateral estoppel or res judicata in its opposition memorandum, but instead raised the issue in its memorandum responding to the argument submitted by the United States  the last of five briefs filed on this motion.[1] The argument was not properly raised, and was not fully briefed. The Court finds that Denver's arguments based on collateral estoppel and res judicata are without merit. Accordingly, Denver's argument with respect to these two doctrines plays no role in my decision.

B. Preliminary Injunction Standard
The Tenth Circuit has adopted a four-part test for a preliminary injunction:

*1238 [T]he moving party must establish: (1) substantial likelihood that the movant will eventually prevail on the merits; (2) a showing that the movant will suffer irreparable injury unless the injunction issues; (3) proof that the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) a showing that the injunction, if issued, would not be adverse to the public interest.
Otero Savings and Loan Ass'n v. Federal Reserve Bank of Kansas City, Missouri, 665 F.2d 275, 278 (10th Cir.1981) (quoting Lundgrin v. Claytor, 619 F.2d 61, 63 (10th Cir.1980)); accord SCFC ILC, Inc. v. Visa USA, Inc., 936 F.2d 1096, 1098 (10th Cir. 1991). Where the final three factors have been shown by the moving party, the Tenth Circuit has applied a more liberal standard to the likelihood of success prong, stating that "it will ordinarily be enough that the plaintiff has raised questions going to the merits so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Otero Savings and Loan, 665 F.2d at 278 (quoting Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 782 (10th Cir.1964)).
Denver has asserted that a heightened standard should be applied in this case because the requested injunction would grant Shattuck substantially the same relief it would receive in a trial on the merits. Contrary to Denver's claim, however, the injunction sought by Shattuck would not give Shattuck all the relief it would receive after a trial. The requested injunction simply maintains the status quo, precluding Denver from attempting to collect the fee until the issues raised here have been resolved. This Court agrees with the rationale of the Second Circuit that the heightened burden applies only where the preliminary injunction provides the ultimate relief sought and "cannot be undone." Tom Doherty Associates, Inc. v. Saban Entertainment, Inc., 60 F.3d 27, 34-35 (2nd Cir.1995). This rationale is consistent with how the heightened burden has been applied in the Tenth Circuit. GTE Corp. v. Williams, 731 F.2d 676, 679 (10th Cir.1984) (applying heightened burden in trademark case where it was "unrealistic" to expect defendant to change name of business back at end of trial); Libertarian Party of Colorado v. Buckley, 938 F.Supp. 687, 689-91 (D.Colo.1996) (applying heightened burden where preliminary injunction would change form of ballots in election that would take place before trial on merits). Here, the effect of the preliminary injunction could be undone simply by lifting it and allowing Denver to pursue collection of the fee. Accordingly, this Court rejects the argument by Denver that Shattuck is required to meet a heightened burden.

C. Irreparable Injury
In its memoranda, Shattuck asserted that its claims of constitutional injury are sufficient to prove irreparable injury. While it is clear that some claims of constitutional deprivation do create a presumption of irreparable harm, see, e.g., Community Communications Co., Inc. v. City of Boulder, Colo., 660 F.2d 1370, 1376, 1380 (10th Cir.1981), not all constitutional claims are entitled to such a presumption. The cases in which courts have found irreparable injury by virtue of a constitutional deprivation have done so (with certain exceptions) where the constitutional injury involves some continuing or future injury which cannot be compensated by monetary damages alone or where a fundamental right is implicated. Hamlyn v. Rock Island County Metropolitan Mass Transit Dist., 960 F.Supp. 160, 162-64 (C.D.Ill.1997) (collecting cases). It appears that there is substantial merit to Shattuck's equal protection claim, which is a persuasive factor in finding such an injury, and the constitutional claims pervade the matters set forth in the complaint. While the Court does not make a per se finding of irreparable injury, the Court believes that there is substantial merit to the equal protection argument. In addition, Shattuck has demonstrated that it will suffer a type of monetary harm that cannot be rectified by a later award of damages. The Court finds that there is not an adequate remedy at law and that money damages on the merits would not properly remedy the constitutional claims presented by Shattuck in this case.
*1239 At the hearing, Shattuck argued that it will suffer an irreparable injury because it lacks funds to pay the fee and would be threatened with bankruptcy or other harms if forced to pay it. One of the exceptions to the general rule that a monetary harm is not considered irreparable is where "the plaintiff is so poor that he would be harmed in the interim by the loss of the monetary benefits." Id. at 162; see also, Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975) (potential for bankruptcy is injury sufficient for preliminary injunction); Tucker Anthony Realty Corp. v. Schlesinger, 888 F.2d 969, 975 (2nd Cir.1989) (same); Tri-State Generation and Transmission Ass'n, Inc. v. Shoshone River Power, Inc., 805 F.2d 351, 356 (10th Cir.1986) (threat to viability of business constitutes irreparable harm). In footnote 8 of its opposition memorandum, Denver stipulated that Shattuck is unable to pay the fee.
Denver argues, however, that Shattuck's indirect parent corporation, Salomon Smith Barney Holdings, Inc. ("Salomon"), can afford to pay the fee and has been paying the cost of the remediation project on Shattuck's property. Shattuck has supplied the Court with evidence indicating that (1) Shattuck is a separate corporate entity from Salomon; and (2) Salomon does not believe it is obligated to pay the fee and would not voluntarily pay it on Shattuck's behalf. While Denver has sought to amend its counterclaims to add Salomon as a defendant, alleging that Shattuck is Salomon's alter ego, that issue has not yet been resolved and, therefore, Salomon is not a party to this proceeding. The Court is not making any finding at this time with respect to the alter ego issue or Salomon's responsibility for the fee. While the Court will allow Denver to raise at a later date the true relationship between Salomon and Shattuck, the Court is persuaded based upon the information before it that Salomon does not have a clear legal obligation to pay the fee Denver seeks to impose under Ordinances 549 and 145. Accordingly, the Court finds that there is not an adequate remedy at law and money damages on the merits would not properly remedy the constitutional claims presented by Shattuck.

D. Balance of Harms
As noted above, Shattuck has shown a likelihood that it will suffer irreparable harm if the application for a preliminary injunction is denied. Denver, on the other hand, has failed to show that it will experience any significant injury from a delay in collecting the fee. First, a large portion of the costs that the fee is intended to cover are not projected to occur for 200 years. Obviously, this case will be resolved long before those funds are needed. The Court has instructed the parties to resolve this case expeditiously and ordered them to submit a proposed schedule designed to assure that this goal is met.
Second, while Denver now expresses concerns about the costs of monitoring the radioactive material, the timing of Denver's passage of the ordinances raises questions about the genuineness of this sentiment and the motivation behind Ordinances 549 and 145. Denver presented testimony suggesting that it considered the question of recouping costs since the early 1990s. Yet there was no evidence that Denver made any effort towards passing an ordinance, such as hiring consultants to write reports, until after this Court issued its orders invalidating on preemption grounds Denver's zoning ordinance barring the storage of radioactive material on Shattuck's property, and denying Denver's request for a stay pending appeal. Thus, there is evidence in the record to suggest that these ordinances were enacted in direct response to the orders this Court entered in 1996. Moreover, there is no other citizen, property owner or taxpayer in Denver who has been assessed a fee under these ordinances. While I make no finding at this time with respect to the purpose or motivation underlying the ordinances, that they were not passed until 1996 and 1997 does suggest that Denver's cost concerns are not so urgent as to outweigh the potential harm to Shattuck. To the extent that Denver may, in the future, seek to assess a fee for disposal on private property other than OU VIII, this order permits them to apply to the Court for a modification in the terms of the injunction allowing for such action.

*1240 E. Public Interest
Denver's arguments that the injunction is contrary to the public interest are the same as those it makes on the balance of hardships: that a delay in collecting the fee will entail costs for the taxpayers. Because the bulk of those costs are years away, and Denver's delay in enacting the ordinances suggests that the problems caused by the interim costs may not be as urgent as Denver has suggested, it does not appear that the issuance of a preliminary injunction would be adverse to the public interest. The Court finds somewhat specious and hollow Denver's argument that it will suffer any damage during the pendency of the injunction. Because the harms to the public interest claimed by Denver are suspect, and there is at least a real potential that the public interest will be harmed if the injunction is not issued, I find that the requested injunction is not contrary to the public interest.

F. Likelihood of Success
As discussed above, where a party seeking a preliminary injunction satisfies the final three requirements, the Tenth Circuit has found that it ordinarily will be enough that there be questions going to the merits that are "so serious, substantial, difficult and doubtful, as to make them a fair ground for litigation and thus for more deliberate investigation." Otero Savings and Loan, 665 F.2d at 278 (quoting Continental Oil Co. v. Frontier Refining Co., 338 F.2d 780, 782 (10th Cir.1964)). In this case, it is clear that such questions exist. While I make no findings with respect to the merits of Shattuck's claims, I believe that the evidence and arguments submitted by the parties demonstrate that there are serious questions regarding both the claim that the ordinances are preempted by CERCLA and that they violate the Equal Protection Clause of the Fourteenth Amendment. These questions merit more deliberate examination and are a fair ground for litigation.

III. CONCLUSION

For the foregoing reasons, Shattuck has satisfied the requirements for issuance of a preliminary injunction, and its application is GRANTED. Accordingly, it is hereby
ORDERED that the City and County of Denver is enjoined from enforcing Ordinances 549 and 145 during the pendency of this action, or until this order has been dissolved or modified, as the ordinances relate to private lands. It is
FURTHER ORDERED that if, at any time, Denver is prepared to assess the private property disposal fee for disposal on a property other than Operating Unit VIII, it may file, after meeting and conferring with Shattuck's counsel as required by D.C.COLO. LR 7.1A, a written request for a modification of this order, with good cause showing, to allow such assessment. It is
FURTHER ORDERED that Denver's request that a bond be entered, as a condition of the injunction, is DENIED because a bond is not appropriate on the record. Finally, it is
ORDERED that this Order is effective nunc pro tunc April 9, 1998.
NOTES
[1] Shattuck filed a motion to strike the portion of Denver's memorandum which argued the collateral estoppel and res judicata issues. The Court denied that motion as moot in an order dated April 10, 1998.