David N. SEDERQUIST, Jr., and Marilyn T. Sederquist, Plaintiffs-Appellants,

v.

CITY OF TIBURON, a Municipal Corporation, Defendant-Appellee.

No. 77–2445.

United States Court of Appeals, Ninth Circuit.

Sept. 28, 1978.

Rehearing Denied Nov. 2, 1978.

---

Robert G. Schuchardt (argued), San Francisco, Cal., for plaintiffs-appellants.

Gary T. Ragghianti, Deputy City Atty. (argued), San Rafael, Cal., for defendant-appellee.

Before SMITH,* WALLACE and HUG, Circuit Judges.

WALLACE, Circuit Judge:

David and Marilyn Sederquist appeal the decision of the district court to abstain from exercising jurisdiction over their inverse condemnation action against the City of Tiburon. Having evaluated the important competing policies at stake whenever a federal court voluntarily declines to exercise its lawful jurisdiction, we affirm.

I

In February of 1975, the Sederquists commenced an action in the district court alleging that the City of Tiburon (the city) had engaged in a course of conduct which had the purpose and effect of a "taking" of their real property within the meaning of the Fifth Amendment as applied to the

* Honorable J. Joseph Smith, United States Circuit Judge for the Second Circuit, sitting by designation.

States through the Fourteenth.[1] Their lengthy complaint alleged that by means of an 18-month moratorium on all development in an area encompassing their property, the subsequent inclusion in the "open-space element" of the city's "general plan"[2] of the road over which they claim an easement of access to their land, and the imposition of burdensome conditions on the right to pave the access road, the city had effectively converted their property into an open park area for public enjoyment and refused to compensate them for this taking. The district judge twice required the Sederquists to amend their complaint, then finally dismissed it for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6). The correctness of that determination is before us in a separate appeal.

Believing the district court's order to be premised upon their failure to request formal permission to pave the access road, the Sederquists did not await our disposition of their initial appeal, but sought the necessary permission from the city. When this was denied, they returned to the district court to commence this action, adding to the allegations of the earlier complaint the formal refusal by the city to permit the access road improvements they claimed were essential to the use and enjoyment of their property.

The district judge initially granted the city's motion to dismiss the complaint for failure to state a claim, but later reversed his decision. At the same time, however, he granted the city's motion to abstain, largely on the basis of our recent decision in *Rancho Palos Verdes Corp. v. City of Laguna Beach*, 547 F.2d 1092 (9th Cir. 1976). In this appeal, the Sederquists challenge the abstention decision.[3]

## II

Analyzing the abstention doctrine is reminiscent of a voyage on uncharted seas. Indeed, it can be concluded that there is not one abstention doctrine, but several. C. Wright, Handbook of the Law of Federal Courts § 52 (3d ed. 1976). Attempting to define the doctrine requires the establishment of limitations which in turn develop principles which do not fit nicely in every factual situation.

■ Because a federal district court generally has a duty to decide cases properly before it, and because of the potential for burdening litigants with extended delay and added expense, "[a]bstention from the exercise of federal jurisdiction is the exception, not the rule." *Rancho Palos Verdes Corp. v. City of Laguna Beach, supra*, 547 F.2d at 1094, *quoting Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Abstention must therefore ordinarily be justified by "important countervailing interest[s]," *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), such as "the desirability of avoiding unseemly conflict between two sovereignties, the unnecessary impairment of state functions, and the premature determination of constitutional questions." *Martin v. Creasy*, 360 U.S. 219, 224, 79 S.Ct. 1034, 1037, 3 L.Ed.2d 1186 (1959).

■ The particular type of abstention doctrine involved in this case allows postponement of the exercise of federal jurisdiction when "a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law." *County of Allegheny v. Frank Mashuda Co., supra*, 360 U.S. at 189, 79 S.Ct. at 1063. This is fre-

1. The complaint also raised other issues which have not been argued on appeal.

2. *See* Cal.Gov't Code §§ 65302(e), 65560–70, 65910–12 (West Supp. 1978).

3. In a hearing on the Sederquists' second action, the district judge confirmed their view that his dismissal of their amended complaint in their first action was based on their failure to pursue certain administrative remedies. He stated further that the dismissal in the first case should not bar the second as res judicata. We do not understand the city to contest this conclusion on appeal, and we therefore need not discuss it.

quently referred to as *"Pullman* abstention" because of its origins in *Railroad Comm'n v. Pullman Co.,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941).

■ A litigant required by the invocation of *Pullman* abstention to take his claim to a state court may submit all issues—state and federal—to that tribunal for final adjudication or may reserve the federal questions for decision by the federal district court should the state court proceedings not render them moot.[4] *England v. Louisiana State Bd. of Medical Exam.,* 375 U.S. 411, 421–22, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

In a case similar to the one before us, we recently upheld a district court's decision to abstain under *Pullman.* In *Rancho Palos Verdes Corp. v. City of Laguna Beach, supra,* 547 F.2d 1092, a land owner alleged that by imposing a moratorium on all development and adopting an interim open-space element in the city's general plan, a municipality had denied him equal protection and due process of law and had taken his property without just compensation. Rather than reach the merits of the complaint, the district court abstained, retaining jurisdiction of the federal constitutional issues for possible future adjudication.[5]

■ In deciding that the district court acted within its discretion, we relied upon the three-prong analysis set forth in *Canton v. Spokane School Dist. No. 81,* 498 F.2d 840 (9th Cir. 1974), interpreting the requirements of *Pullman:*

(1) The complaint "touches a sensitive area of social policy upon which the fed-

eral courts ought not to enter unless no alternative to its adjudication is open."
(2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."
(3) The possibly determinative issue of state law is doubtful.

*Id.* at 845 (footnote omitted). The purpose of this approach, of course, is to identify those cases in which the potential costs of abstention are justified by the expected benefits. Consistent with the highly relevant facts and analysis in *Rancho Palos Verdes,* we conclude that the three tests of *Canton* have been met here.

A.

■ The Sederquists concede that, as we held in *Rancho Palos Verdes,* "land use planning . . . is today a sensitive area of social policy meeting the first *Canton* requirement . . . ." 547 F.2d at 1094.

This is not only because the state has enacted a web of statutes, but also because much of the legislation is recent. California is attempting to grapple with difficult land use problems through new policies and new mechanisms of regulation. The state is also struggling with the problem facing cities and counties in those cases where their zoning efforts to preserve open space in response to the state's announced policy . . . may unwittingly have resulted in a seizure of property rights that they did not intend

4. The second option is not ordinarily available in abstention of the type approved in *Burford v. Sun Oil Co.,* 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943), in which the federal district court dismisses the complaint altogether, rather than retaining jurisdiction of the federal issues as was done in *Pullman. See England v. Louisiana State Bd. of Medical Exam.,* 375 U.S. 411, 415 n.5, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964).

5. Whether eminent domain proceedings provide a separate type of abstention cases is unclear. C. Wright, Law of Federal Courts § 52 at 222–24 (3d ed. 1976). The Court has referred to the "special nature" of eminent domain as justifying abstention by "a district

judge, when his familiarity with the problems of local law so counsels him." *Louisiana Power & Light Co. v. City of Thibodaux,* 360 U.S. 25, 29, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058 (1959). *But see County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 79 S.Ct. 1060, 3 L.Ed.2d 1163 (1959), decided the same day.

Nevertheless, our decision in *Rancho Palos Verdes* does not require any extended analysis of this question. Clearly, if abstention can properly occur there, authority exists to apply the doctrine in the case before us. The language of *Thibodaux* does, however, reinforce the wisdom of interfering with the abstention determination by the district judge only when there is an abuse of discretion.

and cannot afford. Federal courts must be wary of intervention that will stifle innovative state efforts to find solutions to complex social problems.

*Id.* at 1095 (footnote omitted).

### B.

In *Rancho Palos Verdes*, the plaintiff attempted to style the relevant part of his complaint to raise only federal law questions. But we found that the "federal questions depend[ed] on underlying questions of state law, and [that] the resolution of one of those state questions could obviate the need for federal constitutional adjudication." *Id.* The same is true here, meeting the second *Canton* requirement.

█ At the heart of the Sederquists' complaint are their allegations that the city has effectively appropriated their land by including their access road in the open-space element of the city's general plan. It is settled in California that the mere indication in a municipality's general plan that property may in the future be taken for public use is "several leagues short" of an actual taking. *Selby Realty Co. v. City of San Buenaventura*, 10 Cal.3d 110, 119, 109 Cal.Rptr. 799, 805, 514 P.2d 111, 117 (1973). The Sederquists allege, however, that the city has gone beyond the mere planning stage and has imposed what amounts to a de facto zoning ordinance prohibiting the improvement of their access road. California law expressly prohibits open-space zoning to the extent it "will take or damage private property for public use without payment of just compensation therefor" in violation of the Constitution of the State of California or of the United States. Cal. Gov't Code § 65912 (West Supp.1978). Since the state and federal constitutional prohibitions against uncompensated takings are highly similar, *compare* U.S.Const. Amend. V with Cal.Const. art. 1, § 19 (West Supp.1978), it is "particularly appropriate that the California courts be afforded the initial opportunity of interpreting the constitution of their own state in relation to the [Sederquists'] complaint." *Newport Investments, Inc. v. City of Laguna Beach*,

564 F.2d 893, 894 (9th Cir. 1977). Given that opportunity, a state court might avoid the federal constitutional issues by deciding that an illegal taking under the California Constitution has occurred.

Similarly, the Sederquists' claim that unreasonable conditions have been attached to the granting of a permit to pave the access road could be resolved in their favor under state law. In California, such conditions may be invalidated under the "administrative mandamus" procedure, Cal.Civ.Proc. Code § 1094.5 (West Supp.1978), if they are found to be an abuse of discretion. *Selby Realty Co. v. City of San Buenaventura*, *supra*, 10 Cal.3d at 128, 109 Cal.Rptr. at 810, 514 P.2d at 122; *Palmer v. Fox*, 118 Cal. App.2d 453, 456, 258 P.2d 30, 33 (1953); 12 California Real Estate Law & Practice § 423.15[2] (1978).

It is therefore clear that the resolution of state law claims in favor of the Sederquists could avoid altogether the adjudication of the constitutional questions raised by the Sederquists. The second *Canton* test is satisfied.

### C.

Finally, we must determine whether the possibly determinative issues of state law are doubtful. With respect to the first state law issue discussed above, the California Supreme Court has specifically reserved decision on "the question of entitlement to compensation in the event a zoning regulation forbade substantially *all* use of the land in question." *HFH, Ltd. v. Superior Court*, 15 Cal.3d 508, 518 n.16, 125 Cal.Rptr. 365, 372, 542 P.2d 237, 244 (1975), *cert. denied*, 425 U.S. 904, 96 S.Ct. 1495, 47 L.Ed.2d 754 (1976) (emphasis in original). The resolution of that question in the California courts is thus manifestly unclear.

The outcome of the second state law issue mentioned is equally in doubt. Whether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and statewide land use laws and regulations applicable to the area in question. We do not

claim the ability to predict whether a state court would decide that the city here abused its discretion in declining to give the Sederquists permission to pave their access road.

As in *Rancho Palos Verdes,* "[w]e find that the three tests for abstention as required by this court in *Canton* have been met. The district court acted within its discretion in abstaining at this time." 547 F.2d at 1095.

### III

■ . The Sederquists argue that abstention is inappropriate because of the hardship it will cause them. We are not unaware that added burdens are possible; that potential is inherent in every abstention decision. As we have said, however, it is the precise purpose of the *Canton* analysis to limit abstention to those cases where such hardship is justified. We find that the district judge did not abuse his discretion in ordering abstention.

The extra burdens do not, in any event, appear insurmountable. We are informed that the Sederquists have preserved their right to proceed on their claims in state court by commencing an action there within the statutory limitations period on the same cause of action pleaded in these proceedings. In addition, the Sederquists may well have already reserved for decision in the district court any federal questions remaining after their state court proceedings have concluded. *See England v. Louisiana State Bd. of Medical Exam., supra,* 375 U.S. at 421, 84 S.Ct. 461.[6]

AFFIRMED.

---

**6.** That option was expressly left open by the district judge in his order denying the Sederquists' motion to reconsider. Indeed, there is no order in the record dismissing the federal action. The minute order granting the motion to abstain specifically states that the court retains jurisdiction.