**PEARL INVESTMENT COMPANY, a California partnership, Plaintiff-Appellant,**

**v.**

**CITY AND COUNTY OF SAN FRANCISCO, a Municipal corporation, Defendant-Appellee.**

No. 84–2345.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 14, 1985.

Decided Oct. 29, 1985.

Margaret A. Finn, Guadalupe Gamino, Finn & Gamino, San Francisco, Cal., Charles L. Siemon, Brian W. Blaesser, Siemon, Larsen & Purdy, Chicago, Ill., for plaintiff-appellant.

Paula Jesson and Melba Yee, Deputy City Attys., San Francisco, Cal., for defendant-appellee.

Before ANDERSON and CANBY, Circuit Judges, and REA,* District Judge.

CANBY, Circuit Judge:

Pearl Investment Company (Pearl) brought this civil rights action against the City and County of San Francisco (City) alleging that the City Planning Commission (Commission) violated the fifth and fourteenth amendments in acting upon a building permit application filed by Pearl. The sole issue on appeal is whether the district court abused its discretion in postponing the exercise of its jurisdiction pursuant to the *Pullman* abstention doctrine. We affirm.

* The Honorable William J. Rea, United States District Judge for the Central District of California, sitting by designation.

1. Charter § 7.500 provides that:
   [n]o permit or license that is dependent on or affected by the zoning set-back or other ordinances of the city and county administered by the city planning commission, shall be issued except on the prior approval of the city planning commission.

2. San Francisco Municipal Code, Part III, Section 26 provides that:

## BACKGROUND

Pearl owns two buildings in an area of San Francisco zoned for community business. The property has been used for eight commercial shops and twenty-four residential units. On December 31, 1981, Pearl filed an application with the City's Department of Public Works for a building permit to renovate the buildings for office use. Pearl was not apprised of the status of its application until July 2, 1982, when the Department of City Planning (Department) advised Pearl by letter that an environmental review would be required before the application was processed. After that review, the Department, on November 19, issued a Preliminary Negative Declaration that stated that the building renovation would not have a significant environmental impact. A tenants' association appealed that decision to the Commission. At the appeal hearing, the Commission affirmed the Department's issuance of the Negative Declaration and granted the Department's request for discretionary review.

The Commission employs discretionary review, under its powers in the City's Charter Section 7.500 [1] and the City's Municipal Code, Part III, Section 26 [2], to implement the policies of the City's Master Plan. Under discretionary review, Commission review extends beyond determining whether a proposed project complies with pertinent ordinances. The Commission may impose additional conditions tailored to the specific project and the objects of the Master Plan. In this case, the Commission conducted discretionary review because of its concern about the proposed project's dislocation of residential tenants.

> [i]n the granting or denying of any permit, or the revoking or the refusing to revoke any permit, the granting or revoking power may take into consideration the effect of the proposed business or calling upon surrounding property and upon its residents, and inhabitants thereof; and in granting or denying said permit, or revoking or refusing to revoke a permit, may exercise its sound discretion as to whether said permit should be granted, transferred, denied or revoked.

After two continuances, the Commission, on March 10, 1983, began public hearings as part of its discretionary review of Pearl's application. On April 21, the Commission voted "an intent to approve the project, subject to final language being brought before the Commission." At the final public hearing on May 5, the Commission conditionally approved the project as limited to eleven units. The conditions on approval included that Pearl offer relocation assistance to all tenants who did not voluntarily vacate the units by May 5, 1983, and that Pearl cause the development, within San Francisco, of eleven replacement dwelling units of a type and size comparable to those being converted. The motion approving the project referred to the new Residence Element of the City's Master Plan, which had been adopted by the Planning Commission during the afternoon session of April 21, 1983, after the Commission tentatively had approved Pearl's project.

Pearl petitioned in state court for a writ of mandate to compel the City to approve automatically its building application under Cal.Gov't Code §§ 65950 & 65956(b) (West 1983). The petition was denied. Pearl then filed this action in federal court under 42 U.S.C. §§ 1983 & 1985 (1982). The crux of Pearl's complaint is that the Commission exercised its discretionary review power under constitutionally defective provisions and that the Commission imposed the relocation and replacement housing conditions arbitrarily. The complaint alleges federal procedural and substantive due process claims, an equal protection claim and an inverse condemnation claim. Pearl seeks damages and declaratory and injunctive relief.

The City moved to dismiss Pearl's complaint on the ground that the district court should abstain. After a hearing on the motion, the district court exercised its discretion to abstain under the abstention doctrine first articulated in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 498, 61 S.Ct. 643, 644, 85 L.Ed. 971 (1941). The court, however, denied the City's request to dismiss the plaintiff's complaint and stayed the federal action pending state court adjudication of the state law issues. Pearl appealed the abstention order. We have jurisdiction to review a timely appeal of a *Pullman* abstention order. *Rancho Palos Verdes Corp. v. City of Laguna Beach,* 547 F.2d 1092, 1093 n. 1. (9th Cir.1976).

## DISCUSSION

The *Pullman* abstention doctrine allows district courts, in exceptional cases, to postpone the exercise of jurisdiction. *Colorado River Water Conservation Dist. v. United States,* 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). Federal courts should abstain in cases presenting a federal constitutional issue if constitutional adjudication could be avoided or if the constitutional question could be narrowed by a ruling on an uncertain question of state law. *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984); *Harman v. Forssenius,* 380 U.S. 528, 534, 85 S.Ct. 1177, 1181–82, 14 L.Ed.2d 50 (1965); *Railroad Commission v. Pullman Co.,* 312 U.S. at 498, 61 S.Ct. at 644. "[A]bstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law, and premature constitutional adjudication." *Harman,* 380 U.S. at 534, 85 S.Ct. at 1182. This doctrine does not contemplate, however, that federal courts defer to state adjudication when the state law issues are settled or when the outcome is reasonably uncertain. *Id.* Abstention is proper only in exceptional cases where principles of comity and federalism justify postponing the exercise of jurisdiction that Congress conferred upon federal courts.

We review abstention orders for an abuse of discretion. *C–Y Development Co. v. City of Redlands,* 703 F.2d 375, 377 (9th Cir.1983). The district court must exercise its discretion within the narrow and the specific limits of the abstention doctrine. *McIntyre v. McIntyre,* 771 F.2d 1316, 1318–19 (9th Cir.1985); *Pue v. Sillas,*

632 F.2d 74, 78 (9th Cir.1980). We have identified three concurrent criteria for *Pullman* abstention:

> (1) The complaint "touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open."

> (2) "Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy."

> (3) The possibly determinative issue of state law is doubtful.

*Canton v. Spokane School Dist. No. 81,* 498 F.2d 840, 845 (9th Cir.1974) (quoting *Railroad Commission v. Pullman Co.,* 312 U.S. at 498, 61 S.Ct. at 644). In applying these criteria, the district court should identify the state law issues that might be determinative or critical to the case's outcome and should explain why the resolution of those issues is uncertain.

### 1. *Sensitive Areas of Social Policy*

Pearl contends that the district court applied what it perceived as this court's *per se* abstention rule in state and local land-use cases. Pearl argues that this case was brought to redress a violation of civil rights and should not be viewed as a land-use case. Pearl further contends that the district court's decision, in effect, restricts the scope of 42 U.S.C. § 1983 and deprives property owners of a meaningful remedy for the violation of civil rights under color of state law.

■ The Civil Rights Act protects property rights no less than individual liberties. *Lynch v. Household Finance Corp.,* 405 U.S. 538, 542, 543, 92 S.Ct. 1113, 1117, 31 L.Ed.2d 424 (1972). Federal courts should be reluctant to abstain in civil rights cases regardless of the type of constitutional interest at stake; abstention can delay the redress of significant constitutional wrongs. *See Canton v. Spokane School Dist.,* 498 F.2d at 845–46. The practical effect of abstention in these cases may be to impose an exhaustion requirement not appropriate to 42 U.S.C. § 1983. Nevertheless, abstention may be proper in a civil rights case to avoid unnecessary interference with an important state program. *See, e.g., Bank of America v. Summerland County Water Dist.,* 767 F.2d 544, 546–47 (9th Cir.1985); *C–Y Development Co.,* 703 F.2d at 381 ("no *per se* civil rights exception to the abstention doctrine").

■ Pearl urges this court to abandon the "sensitive area of social policy" inquiry, which Pearl argues we apply unevenly. We often have held that land-use planning questions "touch a sensitive area of social policy" into which the federal courts should not lightly intrude. *Bank of America,* 767 F.2d at 546; *Kollsman v. City of Los Angeles,* 737 F.2d 830, 833 (9th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1179, 84 L.Ed.2d 327 (1985); *C.Y. Development Co.,* 703 F.2d at 377; *Santa Fe Land Improvement Co. v. City of Chula Vista,* 596 F.2d 838, 840 (9th Cir.1979); *Sederquist v. City of Tiburon,* 590 F.2d 278, 281 (9th Cir. 1978); *Rancho Palos Verdes Corp.,* 547 F.2d at 1094–95.

We recognize that we have at times declined to abstain in cases dealing with arguably more sensitive social issues. *See, e.g., Playtime Theaters, Inc. v. City of Renton,* 748 F.2d 527 (9th Cir.1984) (zoning of adult theaters), *prob. juris. noted,* —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985); *J–R Distributors, Inc. v. Eikenberry,* 725 F.2d 482 (9th Cir.1984) (anti-obscenity statute), *rev'd on other grounds sub nom. Brockett v. Spokane Arcades, Inc.,* —— U.S. ——, 105 S.Ct. 2794, 86 L.Ed.2d 394 (1985); *Toussaint v. Yockey,* 722 F.2d 1490 (9th Cir.1984) (prison conditions); *Graham v. Deukmejian,* 713 F.2d 518 (9th Cir.1983) (religious challenge to state policy discouraging doctors from performing surgery without blood transfusions). These abstention decisions, however, did not turn on the criterion of "sensitive issue of social policy," which is merely a starting point in our analysis. We do not feel free to discard the criterion entirely. Because most of Pearl's complaint is aimed at the City's application of the new Residence Element

of its Master Plan, we conclude that the first criterion is met.

## 2. State Law Issues

Pearl next contends that its claims are predicated upon violations of federal constitutional rights and that resolution of state law issues would not eliminate or narrow the constitutional issues. Pearl's complaint does not raise independent state law claims; the due process claims, however, are framed in terms of violations of state law. In applying the second criterion, the district court was free to consider the state law issues underlying the claims raised in the complaint. *Santa Fe Improvement Co.*, 596 F.2d at 840.

Pearl's complaint challenges on due process grounds the procedures followed in processing and reviewing its building application. A state court might find that the Commission failed to comply with mandatory procedures and accordingly might order the application approved as filed. *See* Cal. Gov't Code §§ 65943, 65950 (West 1983). Also, Pearl's complaint challenges the validity of the relocation and replacement unit conditions on substantive due process, equal protection, and inverse condemnation grounds. Under the California administrative mandamus procedure, Cal.Civ.Proc. Code § 1094.5 (West 1980 & Supp.1985), a state court might invalidate those conditions if it found that the Commission had abused its discretion. *See Agins v. City of Tiburon*, 24 Cal.3d 266, 276–77, 598 P.2d 25, 31, 157 Cal.Rptr. 372, 378 (1979), *aff'd on other grounds*, 447 U.S. 255, 100 S.Ct. 2138, 65 L.Ed.2d 106 (1980); *Pfeiffer v. City of La Mesa*, 69 Cal.App.3d 74, 78, 137 Cal.Rptr. 804, 806–07 (1977); *see also Sederquist v. City of Tiburon*, 590 F.2d at 282 (refusal to issue paving permit might be invalidated under California's administrative mandamus). We conclude that these state law issues might determine or narrow the federal constitutional questions. Consequently, this case satisfies the second criterion. *C–Y Development Company*, 703 F.2d at 379.

## 3. Uncertainty of state law

Our final and most difficult task is to determine whether the answers to the possibly determinative questions of state law are uncertain. Pearl argues with considerable force that none of those state law issues is uncertain. Regarding the challenged portion of the municipal code, Pearl argues that the state court interpretation is certain. The California Supreme Court has held that the City's Municipal Code, Part III, Section 26 satisfies California's constitutional requirements for the delegation of discretionary power. *City and County of San Francisco v. Superior Court*, 53 Cal.2d 236, 347 P.2d 294, 305, 1 Cal.Rptr. 158, 169 (1959) (permit review process is not a standardless delegation of legislative power); *Lindell Co. v. Board of Permit Appeals*, 23 Cal.2d 303, 311, 144 P.2d 4, 9 (1943). Regarding the failure to observe mandatory time schedules, Pearl argues that the language of these provisions is unambiguous and that further construction of these provisions would not affect the constitutional questions. Pearl also observes that the City asserted *res judicata* as an affirmative defense to the Cal.Gov't Code §§ 65943 and 65950 claims. Finally, to the extent that state law on land regulation is unsettled, Pearl argues that state court interpretation of the new Resident Element will not alter the substantive due process, equal protection or inverse condemnation issues.

The City argues, however, that the challenged conditions may be invalidated in an administrative mandamus procedure. Whether the Commission abused its discretion in imposing the challenged conditions, it argues, turns on the peculiar facts of this case; consequently, the state law is uncertain. *See Santa Fe Land Improvement Co.*, 596 F.2d at 841; *Sederquist v. City of Tiburon*, 590 F.2d at 282–83. The district court concluded that "how the state courts will view the challenged laws and policies" is uncertain because the state courts have never interpreted the local ordinances at issue. In support, the court reasoned that this circuit "has taken the

position that the resolution of state law questions is doubtful in virtually every case involving land use or zoning issues."

If this case presented an issue of first impression in this circuit, we would be inclined to agree with Pearl that the pertinent state law issues are not uncertain. An outcome is not "doubtful" or "uncertain" just because it turns on the facts of the particular case. Uncertainty for purposes of *Pullman* abstention means that a federal court cannot predict with any confidence how the state's highest court would decide an issue of state law. *See* Field, *Abstention in Constitutional Cases: The Scope of the* Pullman *Abstention Doctrine,* 122 U.Pa.L.Rev. 1071, 1090 (1974) (arguing that a "federal court should abstain only when the chance of error [in sense that the federal court's holding on a state law issue will be contradicted by the state's highest court] is reasonably great"). Resolution of an issue of state law might be uncertain because the particular statute is ambiguous, or because the precedents conflict, or because the question is novel and of sufficient importance that it ought to be addressed first by a state court. We do not find those factors to be present in this case. Here there is much force to Pearl's contention that the district court could have ascertained the established standards applied by the California courts in reviewing zoning decisions and accordingly should have applied those standards without deferring to state adjudication.[3]

We do not write on a clean slate, however. Addressing whether a City's conditions imposed in a paving permit might be invalidated under California's administrative mandamus procedure, this court stated:

> [w]hether a city has abused its discretion by refusing to issue a building permit is by nature a question turning on the peculiar facts of each case in light of the many local and statewide land use laws and regulations applicable to the area in question. We do not claim the ability to predict whether a state court would decide that the city here abused its discretion....

*Sederquist,* 590 F.2d at 282–83. We concluded that the district court did not abuse its discretion in abstaining. *See also Santa Fe Land Improvement Co.,* 596 F.2d 838 (rezoning decision challenged; abstention appropriate). In view of these decisions, we cannot say that the district court abused its discretion in abstaining here.

### CONCLUSION

The decision of the district court staying the exercise of its jurisdiction under the *Pullman* doctrine is AFFIRMED.

---

**3.** Pearl also alleges that the City exceeded its police powers in imposing the relocation and replacement housing conditions and that these conditions constitute a taking under the fifth amendment. In the past, we have endorsed district courts' abstaining in inverse condemnation cases. *See, e.g., C–Y Development Co.,* 703 F.2d 375,; *Santa Fe Land Improvement Co.,* 596 F.2d 838; *Sederquist,* 590 F.2d 278; *Newport Investments Inc. v. City of Laguna Beach,* 564 F.2d 893 (9th Cir.1977). We reasoned that because California's prohibition against uncompensated takings is "highly similar" to the fifth amendment prohibition, it is "particularly appropriate that the California courts be afforded the initial opportunity of interpreting the constitution of their own state in relation to the com-

plaint." *Sederquist,* 590 F.2d at 282 (quoting *Newport Investments Inc.,* 564 F.2d at 894). The Supreme Court has since cast doubt upon this reasoning. "Abstention is not required for interpretation of parallel constitutional provisions." *Hawaii Housing Auth. v. Midkiff,* 467 U.S. 229, 104 S.Ct. 2321, 2327 n. 4, 81 L.Ed.2d 186 (1984).

In light of *Midkiff,* abstention solely on the basis of the inverse condemnation issue would appear inappropriate. *But cf. Bank of America v. Summerland County Water Dist.,* 767 F.2d 544 (9th Cir.1985) (abstention in inverse condemnation case upheld, in part because California might reconsider its constitutionally doubtful controlling precedent).