KOREAN BUDDHIST DAE WON SA
TEMPLE OF HAWAII and Abbot
Dae Won Ki, Plaintiffs,

v.

CITY AND COUNTY OF HONOLULU,
the Director of Land Utilization of the
City and County of Honolulu, and the
Zoning Board of Appeals of the City and
County of Honolulu, Defendants.

Civil No. 95–00427 ACK.

United States District Court,
D. Hawaii.

June 24, 1996.

Roger S. Moseley, Honolulu, HI, for plaintiffs.

Duane W.H. Pang, Corporation Counsel, City & County of Honolulu, Honolulu, HI, for defendants.

***ORDER GRANTING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGEMENT OR, IN THE ALTERNATIVE, MOTION TO STAY PROCEEDINGS***

KAY, Chief Judge.

This case involves a challenge to the City and County of Honolulu's zoning laws and

building codes by a Buddhist "church" which constructed a temple that violated the City's building height limits. As discussed below the Court dismisses this case under the doctrine of *Younger* abstention.

## BACKGROUND

In this suit the Korean Buddhist Dae Won Sa Temple of Hawaii and Abbot Dae Won Ki ("Plaintiffs") are suing the City and County of Honolulu ("City"), the Director of Land Utilization of the City and County of Honolulu ("DLU"), and the Zoning Board of Appeals of the City and County of Honolulu ("ZBA"), (collectively "Defendants"). The suit arises out of a long-standing dispute between the parties as to the legality of a temple built in Palolo Valley by Plaintiffs between 1987 and 1990. According to Defendants, Plaintiffs were cited for numerous building code violations during construction. The most flagrant violation, and the violation which serves as the basis for this instant suit, is the fact that Plaintiffs built the temple nine feet in excess of the 66–foot height limit.[1] Though Plaintiffs initially obtained a permit to build a 66–foot building, they added an extra floor without permission. This extra floor brought the building height to 75 feet, which allegedly violates the Land Use Ordinance ("LUO"), the Comprehensive Zoning Code ("CZC"), and the building permit.

Numerous suits involving the temple's height have ensued, including civil and criminal enforcement actions brought by the City against Plaintiffs and by neighborhood organizations against Plaintiffs and the City. First, in 1988 two Palolo neighborhood organizations sued Plaintiffs and the City in state court, claiming that the entire building should be removed because the structure violates the Land Use Ordinance ("LUO"). (Civ. No. 88–2217–07; Defendants' Exhibit 3.) This case is still pending in the state circuit courts. Second, the City brought a civil enforcement action against Plaintiffs to

enjoin them from continuing to violate the zoning and building codes and to require them to correct the violations. (Civ. No. 88–1925–06; Defendants' Exhibit 2.) Third, the City prosecutor brought a criminal enforcement action against Plaintiffs. (Cr. No. 89–1574 and 89–1575; Defendants' Exhibit 4.) Plaintiffs pled "no contest" to the violations but the state court has deferred sentencing on the pleas for two of the counts until the state appellate courts rule on Plaintiffs' administrative challenge to the height limits, discussed below.

In response to these enforcement proceedings Plaintiffs filed two separate variance requests with the ZBA to exceed the height limits. The first variance request was denied and then appealed to the ZBA, which upheld the DLU's initial denial of the variance. On appeal to the state courts, the state lower court held that the City Charter provision required proof of only two hardship tests to receive a variance, rather than all three tests discussed in the Charter. However the state intermediate court dismissed Plaintiffs' appeal of the variance denial as untimely. (Defendant's Exhibit 5.) Subsequently the City amended its Charter to clarify that all three hardship tests were required to obtain a variance.

In 1993 Plaintiffs filed a second variance request with the DLU. The DLU denied the variance request and the ZBA subsequently denied Plaintiffs' appeal of this DLU decision. Plaintiffs then appealed the ZBA ruling to the state courts in four separate appeals.[2] (Civ. Nos. 93–5050–12, 94–4055–10, 94–4056–10, 94–4050–10; Defendants' Exhibits 8–12.) In these state court appeals Plaintiffs raise their federal claims of freedom of religion under the First Amendment and violation of the Religious Freedom Restoration Act ("RFRA"). (Defendants' Exhibits 8, 10, 11 and 12 at pp. 5–6; Defendants' Exhibit 14.) On August 25, 1995 the state lower court rejected Plaintiffs' claims and affirmed

---

1. This is the height limit for which Plaintiffs obtained a building permit. According to Plaintiffs, the applicable height requirements have become more stringent since they first obtained their building permit.

2. A related fifth administrative appeal is brought by the two neighborhood organizations against the ZBA and Plaintiffs. (Civ. No. 4362–11) The organizations had initially appealed to the ZBA to contest actions taken by the DLU Director in reference to Plaintiffs' variance requests. (*See* Defendants' Exhibit 9, p. 5–6.)

the ZBA decisions. In March of 1996 Plaintiffs thereafter appealed to the Supreme Court of Hawaii, where these cases are currently pending.

## STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). Summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Id.* at 322, 106 S.Ct. at 2552.

If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment.

*T.W. Electrical Serv. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (citations omitted). Instead, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, " *'specific facts* showing that there is a genuine issue for trial.' " *Id.* (quoting Fed. R.Civ.P. 56(e)) (emphasis in original). At least some " 'significant probative evidence tending to support the complaint' " must be produced. *Id.* (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.,* 585 F.2d 946, 952 (9th Cir.1978), *cert. denied,* 440 U.S. 981, 99 S.Ct. 1790, 60 L.Ed.2d 241 (1979).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v.*

*Ins. Co. of North America,* 815 F.2d 1285, 1289 (9th Cir.1987) (citing, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Id.*

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.,* 818 F.2d 1466, 1468 (9th Cir.1987), *cert. denied,* 484 U.S. 1006, 108 S.Ct. 698, 98 L.Ed.2d 650 (1988). Moreover, "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (footnote omitted). Indeed, "if the factual context makes the non-moving party's claim *implausible,* that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics,* 818 F.2d at 1468 (emphasis in original) (citing, *Matsushita,* 475 U.S. at 587, 106 S.Ct. at 1356.). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Services,* 809 F.2d at 630–31.

## DISCUSSION

### I. *Younger Abstention*

#### A. *Legal Standards*

This case falls squarely under *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). In *Younger,* the plaintiff brought suit under 42 U.S.C. § 1983 to enjoin a criminal prosecution against him on the grounds that the criminal statute was unconstitutional. The Supreme Court held that a federal court may not enjoin a pending state criminal proceeding in the absence of special circumstances such as bad faith, harassment or a biased state judiciary. *Id.* at 54, 91 S.Ct. at 755.

The *Younger* doctrine espouses a "strong federal policy against federal-court interference with pending state judicial proceedings, absent extraordinary circumstances." *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 431, 102 S.Ct. 2515, 2521, 73 L.Ed.2d 116 (1982). "The policy rests on notions of comity and respect for state functions and was born of the concern that federal court injunctions might unduly hamper state criminal prosecutions." *Champion International Corp. v. Brown*, 731 F.2d 1406, 1408 (9th Cir.1984) (citing *Younger v. Harris*, 401 U.S. at 44, 91 S.Ct. at 750–51).

"*Younger*'s central meaning is that a federal district court may not, save in exceptional circumstances, enjoin, at the behest of a person who has actually or arguably violated a state statute, a state court proceeding to enforce the statute against that person." *Nevada Entertainment Industries v. City of Henderson*, 8 F.3d 1348, 1351 (9th Cir.1993) (quoting *Alleghany Corp. v. Haase*, 896 F.2d 1046, 1050–51 (7th Cir.1990), vacated as moot, 499 U.S. 933, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991)). Although the *Younger* case involved criminal proceedings, the doctrine has been extended to civil and administrative proceedings. *Middlesex County Ethics Committee*, 457 U.S. at 431–32, 102 S.Ct. at 2520–21. The Supreme Court has stated that concerns of comity and federalism are fully applicable to civil and administrative proceedings in which important state interests are involved. *Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. 619, 627–28, 106 S.Ct. 2718, 2722–23, 91 L.Ed.2d 512 (1986); *Middlesex County Ethics Committee*, 457 U.S. at 431–32, 102 S.Ct. at 2520–21 (administrative bar proceedings).

In deciding whether *Younger* abstention applies, the Ninth Circuit applies the three-pronged test outlined by the Supreme Court in *Middlesex*: (1) the state proceedings are ongoing, (2) the proceedings implicate important state interests, and (3) the state proceedings provide an adequate opportunity to raise the federal issues. *Fresh International Corp. v. Agricultural Labor Relations Board*, 805 F.2d 1353, 1357–58 (9th Cir.1986) (citing *Middlesex*, 457 U.S. at 432, 102 S.Ct. at 2521).

### B. *Application*

In the case at bar, the Court finds below that all of the requirements under *Younger* are met and therefore abstention is warranted.

### 1. *Pending State Court Proceedings*

The first element for *Younger* abstention is met because multiple related actions are currently pending in the Hawaii state courts. The most important of these actions are the state court enforcement proceedings instituted by the City against Plaintiffs. First, on June 27, 1988, the City Counsel instituted a civil enforcement action in state court to enjoin Plaintiffs' continued violation of the zoning code and to require Plaintiffs to correct their violations.[3] (Defendants' Exhibit 2 (CV 88–1925–06).) This action has been informally stayed pending the outcome of Plaintiffs' second variance application which is now on appeal to the state courts. Although this is a civil action it is well settled that *Younger* abstention applies to civil proceedings. *See Ohio Civil Rights Commission v. Dayton Christian Schools, Inc.*, 477 U.S. at 627–28, 106 S.Ct. at 2722–23.

Second, the City also brought two criminal proceedings against Plaintiffs to enforce its zoning laws and building code regulations. (Defendants' Exhibit 4 (CR 89–1574 and CR 89–1575).) Plaintiffs contend that these proceedings are no longer pending because they pled "no contest" to these violations and have already served probation for these violations. However these proceedings are nevertheless still pending as to counts 4 and 5. Although Plaintiffs pled no contest to counts 4 and 5, these counts are still pending because the state court took these pleas under advisement and deferred sentencing on these counts pending the outcome of the administrative proceedings brought by Plaintiffs. (Plaintiffs' Exhibit A, p. 3 (¶ 5) and p. 8 (¶ 4).) In addition the criminal proceedings are pending even as to the other counts, to

---

3. There is also a pending civil enforcement action brought by the neighborhood organizations.

the extent that Abbot Dae Won Ki has not corrected the violations as the state court required. (Defendant's Reply Memorandum.) As pending criminal proceedings, these cases are directly on point with *Younger,* which specifically dealt with state criminal actions. 401 U.S. at 54, 91 S.Ct. at 755.

■ In addition to these enforcement proceedings brought by the City against Plaintiffs, there are numerous administrative actions pending in state court. Four of these actions stem from an initial administrative decision by the zoning board which denied Plaintiffs' second request for a variance from the zoning height limits;[4] a fifth suit stems from the DLU's refusal to issue a declaratory ruling requested by Plaintiffs.[5] Although these began as administrative proceedings, *Younger* applies to administrative proceedings that are judicial in nature. *See Ohio Civil Rights Commission* at 629–31, 106 S.Ct. at 2724. Moreover Plaintiffs have appealed these administrative decisions to the Hawaii state courts. On August 25, 1995 the Circuit Court of Hawaii issued a minute order affirming the administrative decision to deny Plaintiffs' second request for a variance of the height limits. Thereafter Plaintiffs appealed these cases to the Hawaii Intermediate Court and Hawaii Supreme Court, where they are now pending.

Given these multiple proceedings that are currently pending before the Hawaii state courts, the Court finds that the first prong for *Younger* abstention is met.

### 2. *Important State Interests*

Second, this case implicates important state interests in land use regulation. The Ninth Circuit has long held that zoning and land use planning constitute "sensitive issue[s] of social policy." *Pearl Investment Co. v. City and County of San Francisco,* 774 F.2d 1460, 1463 (9th Cir.1985) (land use planning). *See also World Famous Drinking Emporium v. City of Tempe,* 820 F.2d 1079, 1082–83 (9th Cir.1987) (challenge to city en-

forcement action to obtain plaintiff's compliance with zoning ordinance to avoid public nuisances such as nude dancing clubs); *Rodrigues v. County of Hawaii,* 823 F.Supp. 798, 801 (D.Haw.1993) (J. Kay). Although *Pearl* involved *Pullman* abstention rather than *Younger* abstention, courts apply *Pearl* to the analogous "important state interest" prong of *Younger. See Rodrigues,* 823 F.Supp. at 801. In *Pearl* the Ninth Circuit abstained in a due process challenge to the procedures a city used to review and grant building permit applications.

In the case at bar, closely akin to the facts in *Pearl,* Plaintiffs challenge the constitutionality of the City's zoning laws and building code ordinances. Plaintiffs initially obtained a building permit to construct the temple but they did not comply with the height requirements under which the city issued the permit. Although Plaintiffs argue that the height requirements in the building code and zoning laws cannot be enforced because they violate federal constitutional and statutory law, the contested height requirements involve areas of sensitive state social policy because they are integral to the city's comprehensive zoning and planning for residential areas.

Moreover this case also implicates the city's important interests in enforcing its criminal laws. In particular, because this action contests the City's zoning height requirements, federal court resolution of this case will necessarily impact the ongoing criminal proceedings which the City has brought to enforce these height requirements. It is unquestioned that criminal proceedings represent paramount state interests. *See Younger.* For these reasons the Court finds that this case satisfies the first prong of the *Younger* abstention doctrine.

■ Plaintiffs argue that the City has no important interest in enforcing the height restrictions as to Plaintiffs' building because, according to Plaintiffs, the zoning laws allow

---

**4.** These cases are 93–5050–12, 94–4055–10, 94–4056–10, and 94–4050–10.

**5.** Plaintiffs filed their petition for a declaratory ruling by DLU on November 15, 1993. The DLU refused to rule and the ZBA thereafter denied

Plaintiffs' appeal of the DLU decision. In CV 94–4080–10 Plaintiffs appealed to state court on the ZBA denial of its appeal from the DLU decision.

other structures—such as chimneys, antennas, flagpoles, and spires—to exceed the height limits imposed on churches. In turn Plaintiff argues that this creates a "legal impossibility of the state having any important interest in enforcing height limits on churches, when other structures, of no particular necessity, can be built several times as tall." (Plaintiffs' Opposition, p. 11.) However the Court finds this argument unpersuasive. Chimneys, spires, and antennas are typically appendages to buildings; they are not "structures" in the same sense as the buildings themselves. Thus the fact that the LUO and CZC allow these items to exceed the building height requirements does not undermine the state's interests in enforcing its height limits as to buildings. For example a 75-foot tall flagpole does not change the residential character of a neighborhood as does a 75-foot tall building.[6]

### 3. *Adequate Opportunity To Litigate Federal Issues*

Finally, Plaintiffs have an adequate opportunity in state court to litigate the constitutional issues raised in this case.

█ To determine whether a plaintiff has an adequate opportunity to litigate the federal issues in an administrative proceeding, courts need not find that the plaintiff could have litigated the federal issues in the initial administrative proceeding. It is sufficient for *Younger* purposes "that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *E.g., Dayton Christian Schools*, 477 U.S. at 629, 106 S.Ct. at 2723–24; *Kenneally v. Lungren*, 967 F.2d 329 (9th Cir.1992). In *Dayton Christian Schools* the Supreme Court noted that "even if Ohio law is such that the Commission may not consider the constitutionality of the statute under which it operates, it would seem an unusual doctrine ... to say that the Commission could not construe its own statutory mandate in the light of federal constitutional principles. In any event, it is

sufficient under *Middlesex* that constitutional claims may be raised in state-court judicial review of the administrative proceeding." *Dayton Christian Schools*, 477 U.S. at 629, 106 S.Ct. at 2723–24 (internal quotes omitted).

Applying these principles to the case at bar, Plaintiffs have an adequate opportunity to raise their federal claims even though five of the pending state proceedings stem from administrative actions. First, Plaintiffs can raise their federal claims as a counterclaim in the civil enforcement action pending in state court. At the hearing for this matter Defendants stipulated that they would not object to Plaintiffs filing a counterclaim in case number 88–1925–06 to litigate their federal claims raised in this action. Second, as to the administrative decisions which Plaintiffs have appealed to the Hawaii state courts, Plaintiffs specifically raised the issue that the height requirements violate their federal constitutional rights of freedom of religion and federal statutory rights under RFRA. Not only did Plaintiffs raise these issues but moreover the state court specifically considered and ruled on them.

In particular, in Plaintiffs' appeal of the ZBA denial of their second variance request in Civ. No. 94–4055, the First Circuit Court of Hawaii ruled:

> Temple failed to adduce sufficient facts showing that the zoning law in question imposed a substantial burden on its religious beliefs. The record amply supports a conclusion that the additional floor not only was an intentional violation, but also secular in nature and purpose.

(Minute Order dated August 21, 1995, Defendants' Exhibit 13.) This minute order also rejected Plaintiffs' appeal of the DLU denial of Plaintiffs' request for a declaratory ruling (case Civ. No. 93–5050–12). This state lower court later issued a written ruling to the same effect. On March 18, 1996 Plaintiffs subsequently appealed this ruling to the Ha-

---

**6.** Moreover the Court rejects Plaintiffs' argument that its building (a temple) falls within the "spires" exception to the height limits. The fact that a building has a point at the top of its roof does not qualify the building itself as a "spire," contrary to what Plaintiffs would have the Court

believe. Even if the point itself could qualify as a spire, only the spire could exceed the height limits; the building upon which the spire was attached would need to meet the height requirements applicable to buildings.

waii Intermediate Court of Appeals, where they have specifically raised their federal claims:

> With respect to both the variance issue and the request for declaratory ruling, the issues also revolve around statutory construction and application *in light of the right to free exercise of religion* in both the U.S. constitution and the State of Hawaii constitution, as well as the Religious Freedom Restoration Act of 1993.

(Attachment to Civil Appeals Docketing Statement, Defendants' Exhibit 16 (emphasis added).)

Plaintiffs assert several arguments why the state proceedings do not give them a full opportunity to litigate their federal claims. First, Plaintiffs argue that plaintiff Dae Won Ki was not a party to the five administrative appeals. However, Dae Won Ki is nevertheless a defendant in both the criminal prosecution and the civil action brought by the City to enforce the zoning laws and building code. (Defendants' Exhibit P, Defendants' Reply, p. 5.) Second, Plaintiffs argue that they cannot seek damages in their administrative appeals.[7] However, Plaintiffs can raise the damages issue in a counterclaim to the City's civil enforcement action in case Civ. No. 88–1925–06. As discussed above, at the hearing Defendants specifically stipulated that they would not object to Plaintiffs doing so.

Third, Plaintiffs contend that the importance of their First Amendment rights at stake (freedom of religion) requires the Court not to abstain. However, although courts have recognized that certain forms of abstention may be inappropriate where a plaintiff contends that his First Amendment rights are violated, *Zwickler v. Koota*, 389 U.S. 241, 252, 88 S.Ct. 391, 397–98, 19 L.Ed.2d 444 (1967) (court would not abstain from facial challenge of statute based on First Amendment); *Ripplinger v. Collins*, 868 F.2d 1043, 1048 (9th Cir.1989) (same); *but see, Almodovar v. Reiner*, 832 F.2d 1138, 1140 (9th Cir.1987) ("there is no absolute rule against abstention in first amendment cases"), *Younger* and its progeny do not support an extension of this principle to *Younger* abstention. Indeed, the plaintiff in *Younger* unsuccessfully argued that the chilling effect of the state's prosecution justified federal intervention in the state proceedings. *Younger*, 401 U.S. at 50, 53, 91 S.Ct. at 753–54, 754–55 (noting that criminal prosecution under a statute regulating expression usually involves contingencies that may inhibit the full exercise of First Amendment freedoms); *see also Middlesex County Ethics Committee*, 457 U.S. at 435–36, 102 S.Ct. at 2522–24 (abstaining from enjoining state ethics proceeding which plaintiff claimed violated his First Amendment rights); *World Famous Drinking Emporium, Inc.*, 820 F.2d at 1082 ("A First Amendment challenge does not alter the propriety of abstention in [an action seeking to enjoin enforcement of a zoning ordinance]"); *Nevada Entertainment Industries*, 8 F.3d at 1350 (abstaining from hearing First Amendment Challenge of administrative proceeding). The *Younger* court further expressed its opinion that a federal court could not properly enjoin enforcement of a statute solely on the basis of a showing that the statute "on its face" abridges First

---

7. The Ninth Circuit has noted that there is confusion over the applicability of *Younger* abstention to claims for damages under § 1983. *Lebbos v. Judges of the Super.Ct. of Santa Clara County*, 883 F.2d 810, 816 (9th Cir.1989). The Supreme Court has not yet squarely ruled on this issue but it has held that federal district courts have no discretion to dismiss rather than stay damages claims under § 1983 when the plaintiff cannot seek damages in the ongoing state proceeding. *Deakins v. Monaghan*, 484 U.S. 193, 201–04, 108 S.Ct. 523, 529–30, 98 L.Ed.2d 529 (1988). The rule in the Ninth Circuit is unclear, but it appears that *Younger* abstention is warranted where litigating the damages issue will create federal-state friction. For example in *Mann v. Jett*, decided before *Deakins*, the Ninth Circuit

held that *Younger* abstention warranted dismissal where the § 1983 damages claim in federal court would have a "substantially disruptive effect upon ongoing state criminal proceedings." 781 F.2d 1448, 1449 (9th Cir.1986). After *Deakins* the Ninth Circuit in *Lebbos* held that *Younger* abstention was not appropriate to dismiss the plaintiffs' damages claims. The *Lebbos* court reasoned that consideration of the damages claims against the private appellees in that case would not interfere with the state proceedings by the receiver to collect judgement. *Lebbos*, 883 F.2d at 817. However *Lebbos* did not address whether it would have been proper to stay the damages claims, since the district court had properly dismissed the damages claims on unrelated alternative grounds. *Id.*

Amendment rights. 401 U.S. at 53, 91 S.Ct. at 754–55.

Last, Plaintiff cites to a case in which a federal district court did not abstain under a set of similar facts involving a church's First Amendment challenge to the District of Columbia's zoning laws. *Western Presbyterian Church v. Board of Zoning Adjustment of the Dist. of Columbia,* 862 F.Supp. 538 (D.D.C.1994). In *Western Presbyterian* a church challenged a zoning ordinance under the constitution and RFRA. Despite a pending appeal of zoning board's decision to the Board of Zoning Adjustment ("BZA"), the court did not abstain. The court reasoned that the BZA had refused to consider the church's constitutional claims and the adjudication of its federal claims on appeal of the BZA decision would take a "considerable lapse of time" during which the church's federal rights might be infringed.[8] *Id.* at 543. However despite this seeming similarity between *Western Presbyterian* and the case at bar, the Court finds the two cases distinguishable because in this case Plaintiffs do not risk the same delays to adjudication of their federal claims as did the plaintiffs in *Western Presbyterian.* The zoning appeal by the *Western Presbyterian* plaintiffs was still pending before the administrative body at time they sued in federal court, whereas in the case at bar Plaintiffs' appeal of the ZBA decision has already been appealed to—and even heard by—the Hawaii state courts. Moreover the other cases involving Plaintiffs are similarly pending before the state courts, not mere administrative bodies. The Court thus finds that *Western Presbyterian* is not controlling.

For the above reasons the Court concludes that the third prong of *Younger* is met in this case.

### 4. *Exceptions to Younger*

■ Even where the three requirements for *Younger* abstention are met, federal courts should not abstain where: (1) the

state proceedings are undertaken for bad faith or for purposes of harassment; or (2) some other "extraordinary circumstance" exists. *Partington v. Gedan,* 880 F.2d 116, 128 (9th Cir.1989). The extraordinary circumstances exception "recognizes that a federal court need not abstain when faced with a flagrantly unconstitutional statute." *Id.*

■ In the case at bar Plaintiffs contend that the zoning height restrictions are facially unconstitutional. The Court rejects this argument. Although Plaintiffs' complaint raises concerns of freedom of religion, the height requirements are not patently unconstitutional for abstention purposes. Although the LUO and CZC height requirements apply to churches and religious entities, Plaintiffs have not shown that on their face these regulations impose stricter requirements on churches than on other buildings. This is not to say that Plaintiffs' constitutional claims have no merit; Plaintiffs nevertheless might ultimately have a claim under the constitution or RFRA. However the zoning requirements are not flagrantly unconstitutional to justify abstention under *Younger.* The test for finding the exception to *Younger* abstention is very difficult to meet: the provision must be "patently violative of express constitutional prohibitions *in every clause, sentence, and paragraph,* and in whatever manner and against whomever an effort might be made to apply it." *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 754–55; *Partington,* 880 F.2d at 128 (emphasis added).

For the reasons stated above the Court finds that *Younger* abstention is warranted and therefore the Court dismisses Plaintiffs' claims. *See Beltran v. State of California,* 871 F.2d 777, 782 (9th Cir.1989) (*Younger* abstention requires dismissal of the federal action).

### II. *Pullman Abstention*

■ Defendants also claim that *Pullman* abstention applies in this case. However as

---

**8.** In addition in *Western Presbyterian* the BZA had not yet issued a written ruling in the administrative appeal of the initial zoning decision, though it had issued an oral decision, and thus the church in that case had not yet appealed the

administrative decision to the state courts. In comparison, in the case at bar the administrative decisions have already been handed down and the appeals *are currently pending* before the state courts.

discussed below the Court finds that *Pullman* abstention is not warranted.

Under the doctrine of *Pullman* abstention federal courts should abstain where state law is uncertain and a clarification of state law might make a federal court's determination of a constitutional question unnecessary. The Ninth Circuit has adopted a three-part test to determine whether *Pullman* abstention is warranted: (1) the complaint involves a sensitive area of state social policy which federal courts ought not intrude upon; (2) federal adjudication of the constitutional question can be avoided by a definitive ruling on a state issue that would terminate the controversy; and (3) the state law in question is unclear. *Pearl Inv. Co. v. City and County of San Francisco*, 774 F.2d 1460 (9th Cir.1985); *Rodrigues v. County of Hawaii*, 823 F.Supp. 798, 802 (D.Haw.1993).

Applied to the case at bar, the first prong for *Pullman* abstention is satisfied because, as found above, land use and zoning are sensitive areas of state social policy. However the second and third prongs are not met. Not only is there no unclear state law at issue, but moreover the state law in question is not likely to obviate the need for adjudication of the constitutional question.

First, state law is not unclear. Defendants argue that state law is uncertain because in 1992 the City amended its Charter to require applicants for variances to meet all three hardship tests and the state appellate courts purportedly have not yet interpreted this amendment.[9] However the amendment merely clarified that to qualify for a zoning variance the party seeking the variance must meet all three hardship tests, rather than just two as the state lower court had implied in Plaintiffs' appeal of their first variance request. Now that the zoning regulation has been amended in this way, it is not unclear that a party must meet three hardship tests to receive a variance. Although Defendants argue that the state courts have not yet "interpreted" this amendment, Defendants make no showing of how these clarified variance requirements, as clarified in 1992, are subject to ambiguous interpretation. Although the United States Supreme Court has not defined just how 'unclear' a state law must be to justify *Pullman* abstention, the general test is that abstention is required "only if the state law is fairly susceptible to an interpretation that would avoid the need for constitutional adjudication." 17A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 4242 at n. 20 (1988). Defendants do not argue that the third hardship test is a brand new test which has never been interpreted by the state courts. To the contrary, apparently the zoning board has used all three hardship tests for some time. The only issue prior to the amended Charter was whether an applicant had to satisfy all three tests or whether two were sufficient to receive a variance.

In addition the zoning reference to "spire" is not ambiguous or unclear. Plaintiffs claim that their temple qualifies under the "spire" exception to the height limits. In particular, Plaintiffs claim that the roof of the temple qualifies as a spire because it has a point at the top and therefore the entire temple satisfies the height limits because it falls within the height limit for spires. In turn Defendants argue that *Pullman* abstention is justified because state law is unclear on what structures qualify under the spires exception. However this does not justify *Pullman* abstention because there is no indication that the definition of 'spire' is unclear. Moreover Defendants have not pointed to any other unclear state law upon which the state courts could invalidate the zoning height restrictions.

Second, there is no state law issue to be resolved that would obviate the need for the federal court to reach the constitutional issues raised by Plaintiffs. Defendants appear to contend that a ruling by the state courts could obviate the need for federal court adjudication of the constitutional issues if they interpret the zoning requirements in such a way to strike down the denial of Plaintiffs' variance request. However, as discussed

---

9. Plaintiffs filed their second variance request in January of 1993, after the Charter was amended. The amendments apply only to the second variance request; Plaintiffs do not claim that the Charter amendments apply retroactively to their initial variance request.

above, there is no unclear state law on which to strike down the variance provision or height restrictions on alternative grounds. The theoretical possibility that the state courts could adopt a limiting construction of the zoning laws or variance requirements does not authorize *Pullman* abstention. *Hawaii Housing Authority v. Midkiff*, 467 U.S. 229, 236–37, 104 S.Ct. 2321, 2327, 81 L.Ed.2d 186 (1984). Such a possibility is remote, where Defendants have not suggested how the zoning height requirements or the variance requirements might be susceptible to conflicting interpretation. As the Supreme Court has stated:

In the abstract, of course, such possibilities always exist. But the relevant inquiry is not whether there is a bare, though unlikely, possibility that state courts might render adjudication of the federal question unnecessary. Rather, '[w]e have frequently emphasized that abstention is not to be ordered unless the statute is of an uncertain nature, and is obviously susceptible of a limiting construction.'

*Id.* at 237, 104 S.Ct. at 2327 (quoting *Zwickler v. Koota*, 389 U.S. 241, 251–52 n. 14, 88 S.Ct. 391, 397 n. 14, 19 L.Ed.2d 444 (1967)).

In addition, the fact that the state courts might strike down the zoning height requirements under the state constitution does not justify *Pullman* abstention because the relevant Hawaii constitutional provision is substantially similar to its counterpart in the federal constitution. *See State ex rel. Minami v. Andrews*, 65 Haw. 289, 651 P.2d 473 (1987), and *Dedman v. Board of Land & Natural Resources*, 69 Haw. 255, 740 P.2d 28 (1987) (largely adopting the federal constitutional standards for free exercise of religion). *Pullman* abstention is not justified when the state constitutional provision is substantially similar to the federal constitutional provision raised in the federal suit. *Midkiff* at 237 n. 4, 104 S.Ct. at 2327 n. 4. *See also Rodrigues v. County of Hawaii*, 823 F.Supp. at 804. Though Plaintiffs raised their freedom of religion challenge under both the state and federal constitutions, Defendants have not argued or showed that the state constitution substantially differs from the federal free exercise clause. Moreover

*Pullman* abstention is not justified merely to give the state courts an opportunity to hold that the statute or ordinance violates the federal constitution. *Midkiff*, 467 U.S. at 236–37, 104 S.Ct. at 2327.

For these reasons the Court finds that *Pullman* abstention is not appropriate in this case.

III. *Ripeness*

Defendants argue in the alternative that this case is not ripe for review because Plaintiffs have not exhausted all their state court appeals of the ZBA's denial of their variance request. However the Court will not reach this issue because the Court finds above that it must abstain from this case under the principles of *Younger*.

### CONCLUSION

The Court GRANTS IN PART and DENIES IN PART Defendant's motion for summary judgement or, in the alternative, to stay proceedings. First, the Court finds that *Younger* abstention is appropriate because there are pending state proceedings in which Plaintiffs can raise their federal claims. In particular, the City has stipulated that Plaintiffs can bring a counterclaim in state court for damages under § 1983 in case number 88–1925–06. For this reason the Court dismisses Plaintiffs' claims without prejudice. Second, the Court abstains only under the *Younger* doctrine; *Pullman* abstention is not warranted because there is no unclear state law that might obviate the need for the Court to reach the federal constitutional issue. Finally, because the Court will abstain under *Younger* the Court does not address the ripeness issue raised by Defendants.

IT IS SO ORDERED.